*In re* EDMUND BENNETT, Asserted to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Edmund Bennett, Respondent-Appellant).

Fourth District   No. 4—93—0129

Opinion filed November 15, 1993.—Rehearing denied December 13, 1993.

John B. Lower and Jeff M. Plesko, both of Guardianship & Advocacy Commission, of Anna, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

Respondent-appellant Edmund Bennett, a voluntary patient at Meyer Mental Health Center (Center), requested discharge. Thereupon a petition for involuntary admission was filed by the State in the circuit court of Macon County. During the proceedings Bennett apparently changed his mind about his request for discharge and asked to remain at the Center on a voluntary basis. The court found Bennett

to be mentally ill and subject to involuntary commitment under the Mental Health and Developmental Disabilities Code (Code) (Ill. Rev. Stat. 1991, ch. 91½, par. 1—100 *et seq.*). Bennett appeals. We affirm.

■ Under the Code any person is subject to involuntary admission in a mental health facility who "(2) *** is mentally ill and who because of his illness is unable to provide for his basic physical needs so as to guard himself from serious harm." (Ill. Rev. Stat. 1991, ch. 91½, par. 1—119(2).) A court may involuntarily commit an individual only on the basis of clear and convincing evidence. (Ill. Rev. Stat. 1991, ch. 91½, par. 3—808; *In re Long* (1992), 237 Ill. App. 3d 105, 109, 606 N.E.2d 1259, 1262.) Expert opinion regarding mental illness and inability to guard oneself from harm must be in the form of explicit medical testimony, based upon a clear and convincing factual basis. *In re Cochran* (1985), 139 Ill. App. 3d 198, 200, 487 N.E.2d 389, 391.

The trial court determined Bennett was mentally ill and subject to involuntary admission under section 1—119(2) of the Code. Dr. James Peters testified Bennett demonstrated psychotic symptoms, including pressured speech, verbal aggression, confusion and incoherence. Dr. Norma Mason opined that Bennett suffered from bipolar disease, characterized by alternating periods of excitability and depression. Peters testified that Bennett was not accepted into the Center's vocational work program because he was unable to understand directions from the staff. Mason testified that when Bennett's mental processes go into high gear he neither hears nor understands anything anyone says to him; when he "just starts talking *** other clients move away from him in confusion" because they do not understand what Bennett is trying to communicate.

A trial court's decision in an involuntary admission proceeding is given great deference and "will not be set aside at the appellate level, even if the reviewing court, after applying the clear and convincing standard, would have ruled differently" (*In re Orr* (1988), 176 Ill. App. 3d 498, 505, 531 N.E.2d 64, 69, citing *In re Mazzara* (1985), 133 Ill. App. 3d 146, 478 N.E.2d 567), unless it is against the manifest weight of the evidence. (*Long*, 237 Ill. App. 3d at 109-10, 606 N.E.2d at 1262.) The original trier of fact is in the best position to weigh the evidence presented to him and determine the credibility of the testifying witnesses. (*Orr*, 176 Ill. App. 3d at 505, 531 N.E.2d at 69.) Dr. Mason was not Bennett's regular physician and conducted only one formalized interview with him. However, Mason based her belief that Bennett is unable to provide for his basic needs so as to guard himself from harm upon her own observation of Bennett interacting with oth-

ers. The trial judge's finding that Bennett was unable to provide for his basic needs so as to guard himself from harm, based on both physicians' evidence, is not against the manifest weight of the evidence.

The Code affords voluntarily admitted patients rights which reflect a legislative intent to encourage voluntary admissions. (*In re Hays* (1984), 102 Ill. 2d 314, 320, 465 N.E.2d 98, 100.) The policy of encouraging voluntary admissions is based on psychiatric evidence indicating that a patient who recognizes his condition and voluntarily undertakes treatment can more likely be rehabilitated than one upon whom therapy is forced. (*Hays*, 102 Ill. 2d at 319, 465 N.E.2d at 100, citing *Developments in the Law, Civil Commitments of the Mentally Ill*, 87 Harv. L. Rev. 1190, 1399 (1974).) The benefits of voluntary admission:

> " 'are less likely to be realized and persons who recognize their need for hospitalization are less likely to seek it if \*\*\* they then can be subjected to involuntary commitment without a significant change in their condition, the perception of their condition, or their willingness to be hospitalized.' " (*Hays*, 102 Ill. 2d at 319-20, 465 N.E.2d at 100, quoting *Appeal of Niccoli* (1977), 472 Pa. 389, 399, 372 A.2d 749, 754.)

Therefore, the Code requires that a patient initially admitted on a voluntary basis may be placed on involuntary status only after that patient has signed a written request for discharge and refuses to rescind that request in writing within five days. The mental health facility within that five-day period must file in court a petition and two certificates asserting that the patient is in need of immediate hospitalization. Ill. Rev. Stat. 1991, ch. 91½, pars. 3—403, 3—601, 3—602.

The Code further requires mental health facilities to maintain a record of their voluntary admittees' written requests for discharge. (Ill. Rev. Stat. 1991, ch. 95½, par. 3—202(a).) Bennett contends the State's failure to attach his written request for discharge to the petition for involuntary admission was reversible error, and he cites several appellate cases to support his proposition that only the document itself can clearly and convincingly demonstrate the request was actually made. However, Bennett failed to refute the State's evidence that he signed a written request for discharge and, until the day of the hearing, expressed no desire to rescind that request. Moreover, none of the cases Bennett cites explicitly requires the request be produced; those cases merely hold involuntary admission improper where *no* evidence exists in the record demonstrating the individual submitted a written request for discharge prior to the involuntary commitment proceedings. (*In re Weimer* (1991), 219 Ill. App. 3d 1005, 1009, 580

N.E.2d 182, 184; *In re Splett* (1991), 143 Ill. 2d 225, 234, 572 N.E.2d 883, 887; *In re Macedo* (1986), 150 Ill. App. 3d 673, 676, 502 N.E.2d 72, 74.) Although "[t]he clearest and most convincing evidence that a written request for discharge has been made is always the written request itself" (*Macedo*, 150 Ill. App. 3d at 676, 502 N.E.2d at 74), here the uncontroverted testimony by Drs. Peters and Mason concerning Bennett's written request constituted sufficient evidence that Bennett actually submitted a written request for discharge.

In *In re Stephenson* (1977), 67 Ill. 2d 544, 554, 367 N.E.2d 1273, 1276, the supreme court recognized the importance of providing mentally ill persons the most beneficial kind of treatment with the minimum amount of confinement necessary to maintain protection of the public. Consistent with that balance, and "[b]ecause the involuntary commitment of a person entails the loss of that person's liberty" (*Long*, 237 Ill. App. 3d at 109, 606 N.E.2d at 1262), the Code allows individuals to request admission as informal or voluntary patients at any time before an adjudication that they are subject to involuntary admission. (Ill. Rev. Stat. 1991, ch. 91½, par. 3—801.) Bennett argues that his comments at the hearing amounted to a request for voluntary admission, and that request was made before the court determined he was subject to involuntary commitment. Before commencement of the hearing, the public defender asserted: "The respondent wishes the court to be advised that he would like to sign a voluntary at this time and I have explained that that is no longer an option. He does want the court to know he is wanting a voluntary admission." The trial court responded: "Well, sir, I understand your request, but at this time it appears the State's Attorney will not go along with [it]. So, we will proceed with the hearing." At the conclusion of the hearing, Bennett requested an opportunity to testify and stated the following:

"Q. [By the public defender:] And you understand this hearing is about whether or not you stay here at the Meyer Center?

A. I wish to stay here as long as possible. I wish to do my best to cooperate. ***

Q. You no longer wish to fight this hearing?

A. No. I wish to waive a hearing, sign in, whatever the judge wishes. I will follow with all my ability."

■■ A trial court can dismiss a facility's petition for involuntary commitment if the mental health center's facility director approves the individual's request for voluntary admission. (Ill. Rev. Stat. 1991, ch. 91½, par. 3—801.) Knowledge that the facility director would deny the request may have been the basis for the public defender's statement that "a voluntary *** is no longer an option." It may also

have been the basis of the court's comment that "the State's Attorney will not go along with [it]." Here, the facility director was not present at the hearing. In *In re Hall* (1981), 92 Ill. App. 3d 1136, 1137-38, 416 N.E.2d 731, 732, when the facility director did not attend the hearing, the court implied that the trial court should deny the patient's request. Such requests have also been denied where a doctor testified at a prehearing conference that involuntary commitment was proper, or where the patient does not recognize his need for treatment (*Hall*, 92 Ill. App. 3d at 1138, 416 N.E.2d at 732), or where the patient has a history of abusing the voluntary admission process (*In re Rusick* (1983), 115 Ill. App. 3d 108, 112, 450 N.E.2d 418, 421-22).

The court may require proof that dismissal of the involuntary petition is in the best interest of the respondent and of the public. (Ill. Rev. Stat. 1991, ch. 91½, par. 3—801.) *In re Byrd* (1979), 68 Ill. App. 3d 849, 854, 386 N.E.2d 385, 388, stated a trial court "should hear evidence as to the advisability of voluntary admission," such as testimony of a physician as to said advisability, prior to denying a voluntary commitment petition and ordering involuntary commitment.

The evidence in this case indicated that although respondent was cooperative when he was first admitted, his cooperation quickly diminished and he refused to take his medication. Two doctors testified that respondent's psychotic symptoms manifested themselves when he was not on medication. There was sufficient evidence from which the trial court could have concluded that involuntary commitment was preferable to voluntary commitment.

Affirmed.

KNECHT and LUND, JJ., concur.