*In re* A.P. *et al.*, Alleged to be Neglected Minors (The People of the State of Illinois, Petitioner-Appellee, v. Anne M. Cooley, Respondent-Appellant).

Fourth District   No. 4—95—0034

Argued August 25, 1995.—Opinion filed January 19, 1996.

David W. Butler (argued), of Bloomington, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Linda Susan McClain (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE COOK delivered the opinion of the court:

On July 2, 1992, the McLean County State's Attorney filed a petition for adjudication of wardship, alleging that A.P. (born July 3, 1985) and N.C. (born September 4, 1987) were neglected minors. At the shelter-care hearing on that date, Assistant Public Defender Tracy Smith was appointed to represent the petitioner, Anne Cooley, the minors' mother. Assistant Public Defender Brian Goldrick was appointed guardian *ad litem* (GAL) for the children. The adjudicatory hearing was held August 18, 1992. At that hearing, Anne admitted that she had unresolved drug and alcohol problems and that the children had been neglected in that she had allowed contact between

the children and Dan Cooley (N.C.'s natural father) despite being advised not to by the Department of Children and Family Services (DCFS). Dan Cooley had been accused of committing physical and sexual abuse upon the children.

The dispositional hearing was conducted September 23, 1992. At that hearing, it was determined the children would be temporarily placed in foster care with the ultimate goal of returning them to their parents. DCFS developed a client-service plan that required Anne to (1) secure stable income, either through a job or through public aid; (2) establish a stable home; (3) seek a drug and alcohol evaluation and follow up with recommended treatment; (4) seek personal as well as marital counseling; (5) complete parenting classes; (6) seek a psychological assessment; and (7) maintain weekly visits with the children.

On September 2, 1994, the State filed a petition to terminate parental rights. The parties were represented by the same attorneys who had represented them at the dispositional hearing. Anne, through one assistant public defender, opposed the termination of her parental rights. Another assistant public defender, acting as GAL for the minors, recommended the termination of parental rights. Both attorneys are full-time assistant public defenders in McLean County, and both maintain offices in the office of the McLean County public defender.

During the course of the previous two years, Anne failed to establish a stable home for the children. During that time, she lived in motels, shelters, and with friends and family. She had also continued to live with her husband, who had been arrested on several occasions for beating her. The Cooleys' DCFS caseworker, Terri Gerber, gave Anne an unsatisfactory rating on establishing a stable home. With regard to employment, Anne had worked as a waitress from March until November 1993, when she quit due to family and drug problems. Anne then claims to have worked from November 1993 until November 1994 cleaning houses with a friend; however, this information was not documented with DCFS. One week before the hearing on the petition to terminate, Anne started work at a factory in Bloomington. Anne was also given an unsatisfactory rating in her progress on achieving her employment goal.

In March 1993, Anne sought a drug and alcohol evaluation. It was recommended that she follow up with outpatient treatment. Anne failed to participate in that program, claiming it would have conflicted with her job and that she needed the money to live. In February or March 1994, Anne again sought an evaluation. This time, however, she failed to complete the exam. Anne once more sought

treatment, immediately prior to the hearing on the petition to terminate. She underwent a 72-hour detoxification program and was recommended for residential treatment, but was told all beds were full. Again Anne received an unsatisfactory rating in regard to her progress on drug treatment.

The record is not clear when Anne and her husband began counseling. The record indicates the Cooleys were counseled at the Family Counseling Center (Center), and that the counseling began sometime prior to June 1993, and was terminated at the beginning of December 1993 for the Cooleys' failure to attend scheduled appointments. During that time, Anne attended only four of the approximately 24 scheduled appointments. In January 1994, with the assistance of DCFS, the Cooleys were again allowed to seek counseling at the Center, but two months later, the counseling was terminated due to the Cooleys' failure to notify the Center when they needed to cancel appointments. Anne was given an unsatisfactory rating in her progress on personal counseling.

The record is silent on the frequency of Anne's visits with the children prior to August 1993, but indicates that between August 1993 and February 1994, she visited with the children one to two times a month. From February to June 1994, Anne missed more visits than she attended, and missed one month entirely. Again, Anne was given an unsatisfactory rating on visitation. Anne never did complete either a psychological assessment or a parenting class.

During closing arguments, the assistant public defender representing the minors argued in favor of terminating Anne's parental rights. The court found that the State had proved the allegation of the petition as to Anne and ordered her parental rights terminated. She raises two issues on appeal: (1) whether the trial court committed reversible error in appointing one assistant public defender to represent a parent and another to represent the children, where the two took adverse positions to one another; and (2) whether the trial court's order finding her to be an unfit parent and terminating her parental rights was against the manifest weight of the evidence.

## I. CONFLICT OF INTEREST

Rule 1.10 of the Rules of Professional Conduct provides that no lawyer associated with a firm shall represent a client when another lawyer associated with that firm would be prohibited from doing so. (134 Ill. 2d R. 1.10.) The individual attorneys who comprise the staff of a public defender are not members of a "firm" for purposes of Rule 1.10. (*People v. Robinson* (1979), 79 Ill. 2d 147, 155-56, 402 N.E.2d 157, 161.) However, although there is no *per se* rule that a conflict on the

part of one lawyer on the public defender's staff will disqualify other lawyers associated with that office, the facts of a particular case may show an actual conflict. (*Robinson*, 79 Ill. 2d at 168, 402 N.E.2d at 167.) In one of the three consolidated cases disposed of in *Robinson*, Bogay and Ishman were represented at separate trials by different members of the public defender's staff. Ishman complained his attorney failed to offer testimony that Bogay was the " 'triggerman,' " in order not to prejudice Bogay's sentencing. (*Robinson*, 79 Ill. 2d at 169-70, 402 N.E.2d at 168.) The court held such evidence was irrelevant to Ishman's defense that he was not a participant, and in fact might have been detrimental to that defense. The court held that to prevail on a claim of ineffective assistance of counsel due to joint representation a defendant must show " 'an actual conflict of interest manifested at trial' " (*Robinson*, 79 Ill. 2d at 169, 402 N.E.2d at 168, quoting *People v. Berland* (1978), 74 Ill. 2d 286, 299-300, 385 N.E.2d 649, 655), and Ishman had failed to do so. By "actual conflict of interest" the court meant something more than the representation of opposing interests. Bogay and Ishman had opposing interests in the sense that each was interested in going free, even at the expense of the other's conviction, but the court held there was no conflict of interest.

In another case consolidated and disposed of in *Robinson*, defendants Winston and Freeman were tried at a single trial for the armed robbery of a bookstore. (*Robinson*, 79 Ill. 2d at 153, 402 N.E.2d at 159.) Freeman was represented by the public defender, who assigned an assistant to represent Winston. Winston was acquitted. Freeman complained there was a conflict (1) when Winston's attorney asked on *voir dire* whether a person associated with someone who commits a criminal act is therefore responsible for it, and (2) when Freeman's attorney in closing argument suggested that a guilty verdict against Winston would be a travesty of justice. The supreme court first observed that the defenses of Winston and Freeman were not antagonistic. (*Robinson*, 79 Ill. 2d at 171, 402 N.E.2d at 168-69.) (A severance was accordingly not required (see *People v. Johnson* (1992), 149 Ill. 2d 118, 132-33, 594 N.E.2d 253, 261 (antagonistic defenses)).) The supreme court held that Freeman had failed to show a conflict of interest: the question on *voir dire* may well have been asked by independent counsel, and there was no evidence the closing argument was intended to aid Winston on account of Winston's representation by the public defender's office. *Robinson*, 79 Ill. 2d at 172, 402 N.E.2d at 169.

Respondent argues this case is controlled by *People v. Lackey* (1980), 79 Ill. 2d 466, 405 N.E.2d 748. *Lackey* involved a petition for

termination of parental rights, where the parents were represented by an assistant public defender and the public defender himself represented the minor as guardian *ad litem*. The public defender recommended termination of parental rights and the appointment of a guardian with power to consent to adoption, "a position clearly in conflict with the interest of the parents, who were represented by his assistant." (*Lackey*, 79 Ill. 2d at 468, 405 N.E.2d at 749.) The supreme court held that *Robinson* applied, and although there was no *per se* rule which applied to public defenders' offices, there was a conflict apparent on the face of the record. Accordingly, the order terminating parental rights and appointing a guardian with power to consent to adoption was reversed and the cause remanded. *Lackey*, 79 Ill. 2d at 468, 405 N.E.2d at 749.

■ The fact that conflicting positions are taken does not end the analysis. The question is whether there is improper pressure on an attorney to sacrifice his client's interests, because of his relationship with the other client or attorney. The problem complained of in *Robinson* was not just that there were opposing positions, but that the defenders did not oppose each other enough, that Ishman's attorney let up on Bogay. (See *Robinson*, 79 Ill. 2d at 169-70, 402 N.E.2d at 168.) In the present case and in *Lackey*, there would clearly be no problem if attorneys from separate offices represented the parents and the children. The single additional fact that the two attorneys are both members of the public defender's office adds nothing to the equation. The individual attorneys who comprise the staff of a public defender are not members of a firm for purposes of Rule 1.10 of the Rules of Professional Conduct. With public defenders' offices " 'the inbred adversary tendencies of the lawyers are sufficient protection.' " (*Robinson*, 79 Ill. 2d at 159, 402 N.E.2d at 162, quoting ABA Standards, The Defense Function, Commentary, at 212-13 (1971).) The reason for the reversal in *Lackey* is that the conflicting representation was not provided by two assistants at equal level in the same office. The complaining party was represented by an assistant and the other was represented by the public defender himself, a person with power and authority over the assistant.

Accordingly, we hold that the trial court did not err in appointing one assistant public defender to represent a parent and another assistant public defender to represent the children, where the two took adverse positions to one another.

## II. MANIFEST WEIGHT OF THE EVIDENCE

Parental unfitness must be proved by clear and convincing evidence. (*In re A.T.* (1990), 197 Ill. App. 3d 821, 825, 555 N.E.2d 402,

405; *In re A.H.* (1991), 215 Ill. App. 3d 522, 530, 575 N.E.2d 261, 266.) A finding of parental unfitness will not be set aside unless it is against the manifest weight of the evidence. (*In re E.S.* (1993), 246 Ill. App. 3d 330, 337, 615 N.E.2d 1346, 1351; *In re K.S.T.* (1991), 218 Ill. App. 3d 431, 435, 578 N.E.2d 306, 309; *A.H.*, 215 Ill. App. 3d at 530, 575 N.E.2d at 266.) Great deference is given the findings of the trial court since the judge had the opportunity to view the witnesses and evaluate the testimony. *In re D.L.W.* (1992), 226 Ill. App. 3d 805, 811, 589 N.E.2d 970, 974; *A.H.*, 215 Ill. App. 3d at 530, 575 N.E.2d at 266.

Following the removal of a child from the home, the parents must make reasonable efforts to correct the conditions that caused the child to be removed from the home. At a minimum, the parents must "make reasonable progress toward the return of the child to such parent within 12 months after an adjudication of neglected minor *** under the Juvenile Court Act or the Juvenile Court Act of 1987." (750 ILCS 50/1(D)(m) (West 1992).) In order for a parent to make "reasonable progress" toward the return of a child, she must take a minimum measurable or demonstrable movement toward that goal. *A.H.*, 215 Ill. App. 3d at 530, 575 N.E.2d at 266.

> " 'Reasonable progress' is an objective standard which exists when the court, based on the evidence before it, can conclude that the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the parent *will have fully complied* with the directives previously given to the parent in order to regain custody of the child." (Emphasis in original.) (*In re L.L.S.* (1991), 218 Ill. App. 3d 444, 461, 577 N.E.2d 1375, 1387.)

(See also *In re J.P.* (1994), 261 Ill. App. 3d 165, 175, 633 N.E.2d 27, 35.) The question of what is a reasonable effort involves a subjective judgment based upon the amount of effort that is reasonable for a particular person, while the question of what is reasonable progress is more objective, depending upon the amount of progress measured from the conditions existing at the time custody was taken from the parent. The benchmark for determining reasonable progress is the situation which triggered the child's initial removal. (*A.H.*, 215 Ill. App. 3d at 530, 575 N.E.2d at 266.) Once the court finds the parents are unfit, the court must, in determining whether to terminate their parental rights, consider the best interests of the child. All of the parental rights must then yield to the best interests of the child. *A.H.*, 215 Ill. App. 3d at 530-31, 575 N.E.2d at 267.

■ The trial court's finding of unfitness and termination of Anne's parental rights were not contrary to the manifest weight of evidence. The evidence clearly and convincingly established that Anne failed to make reasonable progress toward the return of her children within 12 months of their being adjudicated neglected minors, and failed to make reasonable efforts to correct the conditions which were the basis for the removal of the children. Indeed, Anne had over two years in which to make progress toward correcting the problems that caused the removal of her children.

The most compelling evidence concerns Anne's failure to seek treatment for her ongoing drug problem. Anne complains she was given conflicting goals in her client-service plan in that she had to maintain employment and at the same time undergo drug and alcohol treatment that would have interfered with her job. The record does not reflect that she ever discussed this conflict with DCFS, or that she did anything to correct the situation. Furthermore, when the opportunity was available for her to undergo treatment (March 1993), she did not take advantage of it. Now that the opportunity for treatment has been denied to her because all beds were full (November 1994), she claims she is being denied the opportunity to rehabilitate herself.

The record reflects that Anne has not remained in a stable home for six months. The record reflects a failure of Anne and her husband to consistently seek counseling and to make progress regarding the issue of domestic abuse. Finally, the record reflects that Anne did not make reasonable progress toward maintaining a stable job. She did obtain employment at a Bloomington factory immediately prior to the hearing on the petition to terminate parental rights, but like the 72-hour detoxification program, her efforts are too little, too late. A recent "flurry of activity" regarding her goals immediately prior to the adjudicatory hearing on the petition to terminate her parental rights can hardly overcome several months where her efforts were minimal at best. See *L.L.S.*, 218 Ill. App. 3d at 462, 577 N.E.2d at 1387.

Viewing the record and the testimony of the witnesses as a whole, it is apparent the trial court's finding of parental unfitness is not against the manifest weight of the evidence.

## III. BEST INTEREST OF THE CHILD

Even after finding a parent unfit, the court must still hear evidence on and consider the best interests of the child in determining whether to terminate parental rights. The question what is in the best interests of the child should not be treated lightly. (*In re J.T.C.*

(1995), 273 Ill. App. 3d 193, 200, 652 N.E.2d 421, 426.) A separate hearing and determination of the child's best interests is mandatory in order to ensure the proper focus on those interests. That need not be a lengthy or burdensome process, as the fitness and best interest hearings may be held one right after the other, with an unfitness determination necessary before going forward.

■ In a companion case (*In re A.P.* (4th Dist. August 15, 1995, No. 4—94—1020 (unpublished order under Supreme Court Rule 23)), this court considered the termination of the parental rights of Dan Cooley. In that case, we observed there was no specific reference in the trial court's findings of fact and conclusions of law with regard to the best interests of N.C. Nor was there direct testimony on the subject at the termination hearing or any report or other evidence in the record by which the trial court could judge whether termination of respondent's parental rights was in the best interests of N.C. The same observations are applicable in this case. Therefore, we must remand this case to the trial court for a hearing on the issue of termination of respondent's parental rights.

For the foregoing reasons, that portion of the trial court's order finding respondent to be an unfit parent is affirmed, the termination of her parental rights is reversed, and the cause remanded for further proceedings.

Affirmed in part; reversed in part and remanded.

STEIGMANN and KNECHT, JJ., concur.