NO. 4-97-1083

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In the Matter of Terry L. Moore, ) Appeal from

a Person Found Subject to Involuntary   ) Circuit Court of

Admission,   ) Macon County

THE PEOPLE OF THE STATE OF ILLINOIS, ) No. 97MH8

          Petitioner-Appellee, ) 

          v. ) Honorable

TERRY L. MOORE,     )    Scott B. Diamond,

          Respondent-Appellant. )    Judge Presiding.

_________________________________________________________________

JUSTICE GARMAN delivered the opinion of the court:

Respondent Terry Moore appeals an order of the circuit court of Macon County, finding him to be a person subject to involuntary admission under section 3-601 of the Mental Health and Developmen­tal Disabilities Code (Code) (405 ILCS 5/3-601 (West 1996)).  He argues that (1) he was not examined by a psychiatrist within 24 hours of admission, as required by section 3-610 of the Code (405 ILCS 5/3-610 (West 1996)), and (2) the evidence was insufficient.  We affirm.

On June 11, 1997, a petition was filed alleging that Moore was a person subject to involuntary admission.  The petition stated that on the morning of June 10, 1997, Moore awakened his sister-in-law, Gail Durbin, and told her to leave the house because he had turned on the gas and was going to kill himself.  The petition also stated that there was a strong odor of gas in the house.  Moore was admitted to St. Mary’s Hospital (St. Mary’s).  He was examined and certified by a physician on June 10, 1997, at 9:41 a.m. and by a psychiatrist on June 11, 1997, at 9 a.m.  The certificates expressed the opinion that Moore was mentally ill and reasonably expected to inflict serious physical harm upon himself or another in the near future.  These opinions were based upon Moore’s reported suicide attempt, alcohol intoxication, and a history of suicide threats.  The certificates were filed with the petition.  On motion of Moore’s court-appointed counsel, Moore was examined by an independent psychiatrist.  

A comprehensive examination and social investigation report was filed.  It indicated that Moore was being given certain medications, including anti-depressants.  The social investigation completed by a licensed clinical social worker found that Moore was a chronic substance abuser who had threatened suicide three times in the previous month.  He had moved to Illinois from Florida in late 1996, but had been unable to maintain employment due to his alcoholism.  This was his third admission to St. Mary’s within the last 50 days.  He did not follow through on recommendations made upon his last two discharges.  The report suggested both inpatient and outpatient treatment for depression and alcoholism at the Geoffrey M. Geoghegan Recovery Center (Geoghegan), the substance-

abuse arm of the Decatur Mental Health Center.  The report rejected  outpatient treatment as not restrictive enough and hospital­ization in a state facility as too restrictive.  

At the June 19, 1997, hearing on the State’s petition, Officer Gene Pistorius of the Decatur police department testified that he responded at 7:23 a.m. on June 10, 1997, to a call from Durbin stating that Moore had turned on the gas and was threatening to kill himself.  Pistorius stated that since May 1997, officers had been called to that residence 10 times, 5 times for domestic calls and 5 times to check on a possible attempted suicide.  

When Pistorius arrived at the house, he found glass from the front porch door lying on the walkway.  Moore indicated his brother, Les, had broken out the glass and had been arrested.  Moore was intoxicated and, when Pistorius entered the house, there was a "real strong odor" of natural gas.  Although Moore stated the pilot light on the stove had gone out, Pistorius felt the odor was too strong to have been caused by an extinguished pilot light.  He was concerned enough to have the fire department check to see that the gas was turned off and try to get some ventilation in the house.  Pistorius believed Moore to be a danger to himself or others and, for that reason, he took Moore into custody and called for an ambulance to transport him to St. Mary’s.  

On cross-examination, Pistorius stated that Moore told him he had just arrived at the residence.  If that was true, Pistorius agreed that Moore could not have been involved in any gas leak because there was too much gas at that point.  

Choudary Kavuri, psychiatrist at St. Mary’s, testified that he first met Moore on June 1, 1997, during a prior admission to the emergency room.  That incident also involved an alleged suicide attempt by Moore while intoxicated.  Moore told Kavuri that he had lost his job in Florida and his relationship with his wife or girlfriend had ended.  Moore stated that after he was discharged on May 25, 1997, from a previous hospitalization, he was supposed to go to Geoghegan for treatment but did not do so.  Kavuri’s diagnosis for Moore was severe depression and alcohol dependen­cy.  The depression was likely caused by Moore’s personal problems.  Sometimes depression and alcohol dependency go hand in hand.  While alcohol use might temporarily relieve some symptoms of depression, eventually it will make the depression worse.  This results in a "Catch 22" situation in which the person becomes depressed, drinks alcohol, the depression gets worse, and more alcohol is consumed.   Kavuri did not see any evidence indicating that Moore was a danger to himself at the time but, because he did not recall the circumstances of Moore's hospitalization, thought Moore could be a threat to others or to property.  Based on Moore’s three hospital­

izations within a 50-day period involving alcohol consump­tion and suicide attempts, Kavuri opined that Moore is potentially a danger to himself in the near future.  Kavuri noted that, during Moore's hospitalization, he has been coopera­tive in taking his medica­tions; however, he appears to have no insight into his alcohol problem.  Kavuri recommended that Moore be placed as an in-patient at Geoghegan as the least restrictive alternative.  If this alterna­

tive is not satisfactory, Moore should go the McFarland Mental Health Center.   

On cross-examination, Kavuri stated that Moore was first evaluated by the emergency room physician.  After this, and while Moore was still in the emergency room, Kavuri met with a "treatment team" to discuss what could be done for Moore in light of the fact he had been discharged only five days prior to the June 10, 1997, admission.  He was aware at that time that Moore was in the emergency room on an involuntary petition.  Kavuri is aware of no threats Moore has made toward others or aggressive conduct toward others.  

When questioned regarding what time Moore was admitted, Kavuri stated this depends on when he "actually steps on the [psychiatric] unit."  That was at 11:45 a.m. on June 10, 1997.  The "admission sheet" or "face sheet" states that Moore was admitted to St. Mary’s at 7:56 a.m. on June 10, 1997.  Kavuri certified Moore at 9 a.m. on June 11, 1997; Kavuri denied this was more than 24 hours after Moore was admitted to the facility.       

On redirect examination, Kavuri stated that the seventh-

floor psychiatric unit at St. Mary’s is the only place in the hospital that is licensed as a mental health facility.  

At the close of the State’s evidence, Moore’s counsel moved for a directed verdict, arguing that Moore had not been examined by a psychiatrist within 24 hours of admission, as required by statute.  The trial court denied the motion. 

Vicky Carron, Moore’s sister, testified that at 6:55 a.m. on June 10, 1997, Moore called her.  Her "caller I.D." showed that he called from a pay phone at a gas station.  That station was approximately eight or nine blocks from their brother’s house.  Moore told Carron that he had spent the night in a doorway and he asked for a ride to her house, where he had been staying.  She had no vehicle, so she was unable to pick him up.  She presumed he then walked to their brother’s house.  The stove at that house is in very bad shape.  The insulation is gone and the pilot light does not stay on.  Carron has been in the house when the gas smell was very strong. 

Carron testified that it would take Moore some time to walk from the gas station he called from to their brother’s house, because he has a "messed up" hip.  Carron offered to allow Moore to live with her and her family.  She and her husband do not drink or allow any alcohol in the house.  Moore is not a dangerous person; however, when he and their brother get together, they start drinking and getting into trouble.  Carron stated she would see that Moore gets treatment and takes his medication.  

The court admitted into evidence the report of the independent psychiatrist, Marvin Lemaster.  He diagnosed Moore as having major depression, severe and recurrent, and alcohol depen­

dence.  Lemaster concluded that Moore’s judgment is severely impaired and he is an imminent danger to himself or others outside a structured environ­ment.  He lacks impulse control.  Lemaster recommended continued hospitaliza­tion in a safe environment.  

The trial court found that the State had proved by clear and convincing evidence that Moore is subject to involuntary admission.  He ordered Moore placed in Carron’s custody for 180 days.  Moore was directed to seek outpatient treatment at Geoghegan.  Carron was ordered to notify the State’s Attorney if Moore moves or fails to obtain treatment.  

Moore’s counsel filed a motion for modification or reconsider­ation, alleging that the evidence did not support the court’s finding and that Moore had not been examined by a psychia­

trist within 24 hours as required by law.  The motion was denied on October 23, 1997, and Moore now appeals.

Moore first contends that the standard of review should be 
de
 
novo
, arguing that this case involves mixed questions of law and fact and the trial court’s order impacts Moore’s fundamental liberty interests.  We reject this argument as it pertains to the question of sufficiency of the evidence.  The correct standard of review is whether the judgment is against the manifest weight of the evidence.  
In re Knapp
, 231 Ill. App. 3d 917, 919, 596 N.E.2d 1171, 1172 (1992).  The trial court’s decision is given great deference and, providing it is not against the manifest weight of the evidence, "'will not be set aside at the appellate level, even if the reviewing court, after applying the clear and convincing standard, would have ruled differently.'"  
In re Bennett
, 251 Ill. App. 3d 887, 888, 623 N.E.2d 942, 944 (1993), quoting 
In re Orr
, 176 Ill. App. 3d 498, 505, 531 N.E.2d 64, 69 (1988).  This standard of review is the appropriate one because the trial court, having seen and heard the witnesses testify, is in the best position to weigh the evidence and determine the credibility of the witnesses.  
Bennett
, 251 Ill. App. 3d at 888, 623 N.E.2d at 944.  

Moore next argues that the trial court erred in refusing to dismiss the petition where Moore was not examined by a psychia­

trist within 24 hours of admission.  As the facts are not in dispute on this issue and the question is one of law, 
de
 
novo
 review is appropriate.  
People v. Saunders
, 288 Ill. App. 3d 523, 525, 680 N.E.2d 790, 791 (1997).  

Moore was admitted to St. Mary’s under the provisions of section 3-606 of the Code (405 ILCS 5/3-606 (West 1996)), which allows a peace officer to take a person into custody and transport him to a mental health facility when there are reasonable grounds to believe that the person is subject to involuntary admission and is in need of immediate hospitalization to protect that person or others from physical harm.  Section 3-610 of the Code provides: 

"As soon as possible but not later than 24 hours, excluding Saturdays, Sundays[,] and holidays, after admission of a respondent pursuant to this Article, the respondent shall be examined by a psychiatrist.  The psychia­

trist may be a member of the staff of the facility but shall not be the person who executed the first certificate.  If the re­

spondent is not examined or if the psychia­

trist does not execute a certificate pursuant to Section 3-602, the respondent shall be released forthwith."  405 ILCS 5/3-610 (West 1996).   

Moore argues that he was admitted for purposes of section 3-610 of the Code when he was admitted to the emergency room of St. Mary’s at 7:56 a.m. on June 10, 1997.  Thus, according to Moore, Kavuri’s examination of him at 9 a.m. on June 11, 1997, was not within the required 24-hour period and he should have been released.  The State argues that Moore was admitted under the Code when he stepped onto the 
seventh-floor psychiatric unit at 11:45 a.m. on June 10, 1997; thus, Kavuri’s examination took place within 24 hours of Moore’s admission.  

The parties have not cited, nor has our own research revealed, any cases dealing with this precise question.  Moore argues that section 3-610 of the Code is directed to time, not place.  However, the time element becomes significant only after a respondent is admitted to a mental health facility under the Code.  Admission to such a facility triggers the running of the 24-hour period within which the respondent must be examined by a psychia­

trist and a certificate executed.  

Moore envisions situations in which respondents are detained for hours, or even days, in other parts of a hospital before being taken to the psychiatric floor.  However, such a scenario is unlikely in these days of hospital cost cutting and health maintenance organization restric­tions.  What is more likely to happen, should we agree with Moore’s interpretation of the statute, is that persons in need of mental health treatment would be released without that treat­ment, because personnel in the psychiat­ric unit of a large hospital were unaware of their presence in some other part of the hospital.  If the 24 hours pass without an evaluation under section 3-610 of the Code, immediate release is mandatory.  On the other hand, persons admitted to a stand-alone mental health facility would not run the same risk of not receiving treatment.  We reject an interpretation of the statute that would result in such disparate treatment of mentally ill persons.

The statutory language, read as a whole, supports our decision.  The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature.  
In re Marriage of Logston
, 103 Ill. 2d 266, 277, 469 N.E.2d 167, 171 (1984).  In determining legislative intent, the statute must be read as a whole and all relevant parts must be considered.  
People v. Jordan
, 103 Ill. 2d 192, 206, 469 N.E.2d 569, 576 (1984).

"Where the language of a statute admits of two constructions, one of which would make the enactment absurd and illogical, while the other renders it reasonable and sensible, the construction which leads to an absurd result must be avoided.  [Citation.]  A proper inter­

pretation of a provision cannot simply be based on its language; it must be grounded on the 'nature, objects[,] and the consequences that would result from construing it one way or the other.'"  
Mulli­gan v. Joliet Re­gional Port District
, 123 Ill. 2d 303, 312-13, 527 N.E.2d 1264, 1269 (1988), quoting 
Carrigan v. Illi­nois Liquor Control Comm'n
, 19 Ill. 2d 230, 233, 166 N.E.2d 574, 576 (1960).  

The Code defines "mental health facility" as follows:

"'Mental health facility' means any licensed private hospital, institution, or facility or section thereof, and any facility, or section thereof, operated by the State or a political subdivision thereof for the treat­

ment of persons with mental illness and in­

cludes all hospitals, institutions, clinics, evaluation facilities, and mental health centers which provide treatment for such persons."  405 ILCS 5/1-114 (West 1996).

"Licensed private hospital" is defined as: 

"[A]ny privately owned home, hospital, or institution, or any section thereof which is licensed by the Department of Public Health and which provides treatment for persons with mental illness."  405 ILCS 5/1-113 (West 1996).

The language of the foregoing statutory provisions recognizes that there may be sections within a hospital devoted to treatment of mentally ill patients.  Those sections or units, and not the entire hospital, are mental health facilities for purposes of the involuntary admission provisions of the Code. Indeed, Kavuri testified that St. Mary’s seventh
-floor psychiatric unit is the only section of the hospital licensed as a mental health facility.   We therefore conclude that Moore was examined by Kavuri within 24 hours of his admission to a mental health facility under section 3-610 of the Code.  

Respondent last argues that the State failed to prove by clear and convincing evidence that he is subject to involuntary admis­sion.  No person may be found subject to involuntary admission unless that finding has been established by clear and convincing evidence.  405 ILCS 5/3-808 (West 1996); 
In re Rovelstad
, 281 Ill. App. 3d 956, 967, 667 N.E.2d 720, 727 (1996).

The term "person subject to involuntary admission" means "[a] person with mental illness and who because of his or her illness is reasonably expected to inflict serious physical harm upon himself or herself or another in the near future."  405 ILCS 5/1-119(1) (West 1996).  

Here, Kavuri testified that Moore was suffering from severe depression and alcohol dependency.  According to Kavuri, when these two conditions exist together, they each contribute to the worsening of the other.  Moore had been hospitalized three times in the previous 30 days with the same problems.  He had consumed alcohol to intoxication and had made suicide attempts.  Officer Pistorius testified that he had been to Moore’s residence five times in the previous six weeks to check on possible suicide attempts.  Moore had experienced personal problems in the previous six months, which Kavuri testified had contributed to his mental illness.  The report of Lemaster, the independent psychiatrist, supports Kavuri’s diagnosis and concerns about Moore’s potential for danger to himself and others.  

We conclude that the State proved by clear and convincing evidence that Moore was subject to involuntary admission.  Commitment need not be delayed until someone is actually harmed.  
In re Clark
, 246 Ill. App. 3d 362, 370, 615 N.E.2d 1244, 1250 (1993),  

Accordingly, the trial court’s order finding Moore to be subject to involuntary admission is affirmed.

Affirmed.

GREEN and McCULLOUGH, JJ., concur.