721 N.E.2d 1202 (1999)
309 Ill. App.3d 493
242 Ill.Dec. 671
In re: B.W. and D.W., Alleged to be Neglected Minors (The People of the State of Illinois, Petitioner-Appellee,
v.
Simon Caldwell, Respondent-Appellant.
No. 4-99-0520.
Appellate Court of Illinois, Fourth District.
December 16, 1999.
*1204 Mark D. Johnson, Johnson Law Office, Ltd., Bloomington, for Simon Caldwell.
Charles G. Reynard, State's Attorney, Bloomington, Norbert J. Goetten, Director, Robert J. Biderman, Deputy Director, James C. Majors, Staff Attorney, State's Attorneys Appellate Prosecutor, Springfield, for the People.
Justice KNECHT delivered the opinion of the court:
Respondent father, Simon Caldwell, appeals the order of the circuit court of McLean County, finding him an unfit parent and terminating his parental rights. Respondent argues the trial court's finding of unfitness was against the manifest weight of the evidence. We disagree and affirm.

I. BACKGROUND
The record before us establishes the following. The minor, B.W., was born June 23, 1995. On January 17, 1996, the State filed a petition for adjudication of wardship, alleging B.W. was a neglected minor as defined in section 2-3 of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3 (West 1996)). A shelter-care hearing was held on January 17, 1996, in which temporary custody of the minor was awarded to the Department of Children and Family Services (DCFS).
An adjudicatory hearing was held on March 25, 1996, in which respondent mother admitted the State's allegation of neglect due to injurious environment. 705 ILCS 405/2-3(1)(b) (West 1996). Based on this admission, the trial court found B.W. was a neglected minor.
At the dispositional hearing on May 6, 1996, the trial court transferred guardianship of the minor to DCFS. On June 11, 1997, a permanency hearing was held and, thereafter, on June 12, 1997, the trial court found the best interests of the child required the child remain in the guardianship of DCFS.
On March 27, 1998, respondent was named as a putative father of B.W. That same day, the trial court issued a summons to respondent, requiring him to appear in court on July 14, 1998. On May 6, 1998, respondent wrote a letter to the trial court judge, requesting a paternity test and expressing an interest in obtaining custody of B.W.
On May 11, 1998, the Baby Fold directed a letter to respondent, advising him he had been named as a putative father of B.W. On May 13, 1998, respondent responded to the Baby Fold by letter, again *1205 requesting a paternity test and expressing interest in custody.
On July 14, 1998, respondent appeared before the trial court and was ordered to submit to a paternity test. On November 30, 1998, the paternity test taken by respondent revealed a 99.99% probability he was the biological father of B.W. On January 15, 1998, the Baby Fold wrote a letter to respondent, advising him of the results of the paternity test.
On February 5, 1999, respondent admitted to the paternity of B.W., and the trial court entered an order as to paternity. That same day, the State filed a petition to terminate respondent's parental rights, alleging, inter alia, failure to make reasonable progress toward the return of the child (750 ILCS 50/1(D)(m) (West 1998)) and failure to discharge his parental responsibilities due to repeated incarceration (750 ILCS 50/1(D)(s) (West 1998)).
On May 26 and 27, 1999, the trial court held hearings on the petition to terminate parental rights. At the hearings, three child welfare specialists testified on behalf of the State. The evidence revealed the Baby Fold informed respondent as early as May 11, 1998, he had been named as a putative father of B.W. Respondent sent a letter dated May 13, 1998, to the Baby Fold in which he requested a paternity test but did not request visitation or express a desire to receive unification services. In absence of a request from respondent to participate in services, respondent was not included in any of the client service plans developed at that time. Thereafter, on January 15, 1999, the Baby Fold sent a letter to respondent, advising him of the results of the paternity test and requesting he contact the Baby Fold if interested in receiving services. Respondent failed to respond to this correspondence and, therefore, was not incorporated into any client service plan or afforded unification services.
Other evidence presented at the termination hearings included the testimony of respondent, who testified as follows. He was unaware of the existence of the child until he was notified through the court system in March 1998. He had a one-time sexual encounter with the respondent mother in 1994 shortly before his most recent incarceration and was unaware she had become pregnant. He expressed an interest in receiving custody of B.W. and indicated he was scheduled to be released from prison in either May or August 2000.
At the hearing on the petition to terminate, the trial court took judicial notice of respondent's history of criminal convictions and record of incarceration, which included the following. On August 25, 1992, respondent was sentenced to imprisonment and probation for two counts of aggravated battery. On August 24, 1993, respondent received two concurrent sentences of 364 days of imprisonment for criminal damage to property and theft. Thereafter, respondent was sentenced to two concurrent three-year terms of imprisonment for criminal damage to property and unlawful delivery of a controlled substance. On August 18, 1997, respondent was sentenced to two concurrent terms of eight years of incarceration for criminal drug conspiracy and two counts of unlawful delivery of a controlled substance.
In addition to respondent's criminal history, the trial court took judicial notice of McLean County case No. 89-J-28 in which respondent was found to have neglected another of his minor children in creating an injurious environment by means of excessive corporal punishment. The child was adjudicated a neglected minor and made a ward of the court, and guardianship was transferred to the child's maternal great grandparents.
At the close of evidence, the trial court found respondent father unfit based on clear and convincing evidence because he (1) failed to make reasonable progress toward the return of the minor child within nine months after the adjudication of neglect (750 ILCS 50/1(D)(m) (West 1998)) and (2) failed to discharge parental responsibilities due to repeated incarceration (750 ILCS 50/1(D)(s) (West 1998)). Thereafter, *1206 the trial court terminated respondent father's parental rights. This appeal followed.

II. ANALYSIS
Respondent father argues the trial court's finding of unfitness was against the manifest weight of the evidence.
Parental unfitness must be proved by clear and convincing evidence. In re A.P., 277 Ill.App.3d 593, 597, 214 Ill.Dec. 299, 660 N.E.2d 1006, 1010 (1996). A finding of unfitness may result from failure by the parent to make reasonable progress toward the return of the child within nine months after adjudication (750 ILCS 50/1(D)(m) (West 1998)) or failure to discharge parental responsibilities due to repeated incarceration (750 ILCS 50/1(D)(s) (West 1998)). Great deference is given to the findings of the trial court as the trial court judge had the opportunity to view the witnesses and evaluate the testimony. Accordingly, a finding of parental unfitness will not be set aside unless it is against the manifest weight of the evidence. A.P., 277 Ill.App.3d at 598, 214 Ill.Dec. 299, 660 N.E.2d at 1010. A decision is against the manifest weight of the evidence when it is clearly evident a conclusion opposite to that reached by the trial court was the proper disposition. In re J.P., 261 Ill.App.3d 165, 174, 198 Ill.Dec. 565, 633 N.E.2d 27, 34 (1994).
First, respondent argues the trial court's finding of unfitness due to repeated incarceration was against the manifest weight of the evidence. Respondent disputes the trial court's interpretation and application of section 1(D)(s) of the Adoption Act (750 ILCS 50/1(D)(s) (West 1998)) to the facts of the present case.
The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. In re Moore, 301 Ill.App.3d 759, 765, 235 Ill.Dec. 93, 704 N.E.2d 442, 446 (1998). This inquiry begins with an examination of the language of the statute itself, which is the best evidence of legislative intent. In re E.M., 295 Ill.App.3d 220, 225, 229 Ill.Dec. 658, 692 N.E.2d 431, 435 (1998). Clear statutory language will be given effect without resort to other tools of construction. However, if the meaning of the statute is unclear from the language itself, legislative intent may be discerned through consideration of the reason and necessity for the statute, the evils to be remedied, and the objectives to be obtained. To effectuate legislative intent, courts avoid construing a statute so as to defeat its purposes or yield an absurd or unjust result. In re K.B.J., 305 Ill.App.3d 917, 921, 238 Ill.Dec. 1007, 713 N.E.2d 253, 256 (1999).
We begin our inquiry of legislative intent by examining the language of section 1(D)(s) of the Adoption Act, which provides the following ground for unfitness:
"The child is in the temporary custody or guardianship of [DCFS], the parent is incarcerated at the time the petition or motion for termination of parental rights is filed, the parent has been repeatedly incarcerated as a result of criminal convictions, and the parent's repeated incarceration has prevented the parent from discharging his or her parental responsibilities for the child." 750 ILCS 50/1(D)(s) (West 1998).
In the present case, respondent does not dispute he was incarcerated at the time of the child's birth and throughout the duration of these proceedings. At issue, however, is the meaning and application of the portion of section 1(D)(s) of the Adoption Act (750 ILCS 50/1(D)(s) (West 1998)) that requires the court find "the parent's repeated incarceration has prevented the parent from discharging his or her parental responsibilities for the child."
Respondent argues a finding of unfitness under section 1(D)(s) of the Adoption Act requires repeated incarceration during the lifetime of the child in question. Although respondent concedes his extensive and repeated history of incarceration, he concludes the trial court erred in its finding of unfitness because respondent has been incarcerated only once during the lifetime of the child.
*1207 In light of respondent's contention, we must examine the purposes of the Juvenile Court Act (705 ILCS 405/1 et seq. (West 1998)) and the Adoption Act (750 ILCS 50/1 et seq. (West 1998)) to determine the appropriate application of the statutory language at issue. Section 2-29 of the Juvenile Court Act (705 ILCS 405/2-29 (West 1998)) authorizes termination of parental rights pursuant to the Adoption Act. The legislature expressed its clear intent the Juvenile Court Act (705 ILCS 405/1-2(1), (4) (West 1998)) be liberally construed to carry out the purposes expressed therein, which are to serve the best interests of the child in relation to the child's safety and the moral, emotional, mental, and physical welfare of the child. K.B.J., 305 Ill.App.3d at 921, 238 Ill.Dec. 1007, 713 N.E.2d at 257. The Adoption Act (750 ILCS 50/20, 2.1, 20a, (West 1998)), likewise, is to be construed liberally in concert with the Juvenile Court Act and the best interests and welfare of the child are of paramount consideration.
We interpret the legislature's intent, as expressed in its liberal-construction directive, as contemplating a broad, inclusive application of statutory concepts. Adhering to this mandate of liberal construction, we hold a parent's comprehensive history of repeated incarceration due to criminal activity is appropriately considered in the determination of unfitness under section 1(D)(s) of the Adoption Act (750 ILCS 50/1(D)(s) (West 1998)).
We find this interpretation to be legitimate in that a history of repeated incarceration progressively impedes a parent's ability to discharge parental obligations. Repeated incarceration creates a progressive impediment because a prior history of criminality may be used as a factor in determining whether to impose or enhance sentencing in later criminal convictions. 730 ILCS 5/5-3-2 (West 1998). Each incident of incarceration is interrelated for the purpose of assessing fulfillment of parental obligations and should not be viewed in isolation. Respondent's interpretation of section 1(D)(s) of the Adoption Act disregards the fact the cumulative effect of repeated incarceration influences the present ability to discharge parental responsibilities.
Turning to the facts of the present case, we find the trial court's finding of unfitness under section 1(D)(s) of the Adoption Act (750 ILCS 50/1(D)(s) (West 1998)) was not against the manifest weight of the evidence. Here, respondent has an extensive history of repeated incarceration. Respondent impregnated the mother of the child during a brief period of freedom and has been incarcerated since that time. Respondent's most recent incarceration prevented him from even learning of the child's existence until after the initiation of these proceedings. Respondent's repeated and continuous incarceration prevented him from discharging his parental responsibilities, not only at the birth of the child, but also throughout the entirety of the child's life and these proceedings. Moreover, respondent's ability to discharge his parental responsibilities will continued to be impaired because he will remain incarcerated until the child's fifth birthday. We agree with the trial court's determination on this point.
Next, respondent argues the trial court's finding of unfitness due to the failure to make reasonable progress was against the manifest weight of the evidence. Specifically, respondent argues he did not know of the existence of the child in a timely manner so he had no opportunity to show reasonable progress. We disagree.
The standard for determining whether reasonable progress has occurred is an objective one. A.P., 277 Ill.App.3d at 598, 214 Ill.Dec. 299, 660 N.E.2d at 1011. Reasonable progress may be found when the trial court, based upon the evidence, can conclude the parent's progress is sufficiently demonstrable and is of such a quality the child can be returned to the parent in the near future. In re L.L.S., 218 Ill. App.3d 444, 461, 160 Ill.Dec. 804, 577 N.E.2d 1375, 1387 (1991). At a minimum, reasonable progress requires a measurable or demonstrable movement toward the *1208 goal of reunification. In re K.P., 305 Ill. App.3d 175, 180, 238 Ill.Dec. 375, 711 N.E.2d 478, 482 (1999).
In the present case, the trial court's finding of unfitness due to the failure to make reasonable progress was not against the manifest weight of the evidence. First, respondent was unaware of the birth of the child. Then, upon learning of the child's existence and the neglect proceeding, respondent failed to make any reasonable progress toward unification.
The evidence presented at the termination hearing established respondent was offered the opportunity to request services and engage in visitation. Respondent failed to do so. Respondent suggested he was interested in receiving custody of B.W. in his letters to the trial court and to the Baby Fold. The record reveals he made no progress toward that end. Respondent probably learned of the possibility of paternity in March 1998 but no later than May 6, 1998. Respondent's parental rights were terminated on May 27, 1999. During this one-year period respondent did not request services for unification or seek visitation. We know respondent was unaware of the birth of B.W. However, to suggest respondent is not responsible for his nescience ignores the fact respondent's own criminal behavior removed him from the community and deprived him of the knowledge of the child's birth. In light of the evidence presented, we conclude the trial court properly found respondent unfit by clear and convincing evidence.

III. CONCLUSION
We conclude the trial court's finding of unfitness as to the respondent father was not against the manifest weight of the evidence. The judgment of the circuit court of McLean County is affirmed.
Affirmed.
COOK, P.J., and GARMAN, J., concur.