*In re* ALFRED H., a Person Found Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Alfred H., Respondent-Appellant).

Fourth District    No. 4—04—0889

Opinion filed July 19, 2005.

KNECHT, J., dissenting.

Jeff M. Plesko, of Guardianship & Advocacy Commission, of Anna, and Cynthia Z. Tracy, of Guardianship & Advocacy Commission, of Peoria, for appellant.

Jack Ahola, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Thomas R. Dodegge, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Respondent, Alfred H., appeals the trial court's June 2004 order finding him subject to involuntary admission to a mental-health facility pursuant to section 3—700 of the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/3—700 (West 2002)). Respondent contends (1) his procedural due-process rights were violated and (2) no clear and convincing evidence warranted respondent's involuntary admission. We affirm.

On October 5, 2004, Amy Mundwiler filed a petition for involuntary admission of respondent by court order. The petition alleged respondent was a person who was mentally ill and who, because of his illness, was (1) reasonably expected to inflict serious physical harm upon himself or another in the near future, (2) unable to provide for his basic physical needs so as to guard himself from serious harm, and (3) in need of immediate hospitalization. Specifically, the petition stated that respondent demonstrated aggressive, delusional behavior and was preoccupied with President Bush. Respondent did not sleep or take his medication and was observed throwing lighted matches near a filled gasoline can. Respondent lived with his elderly parents and they were "very frightened."

The trial court ordered the clerk to issue a writ directing the sheriff to take custody of respondent and to take him to St. Mary's Hospital, Decatur, Illinois, for detention and examination. Two doctors examined respondent and filed certificates finding respondent was subject to involuntary admission and in need of immediate hospitalization. On October 7, 2004, the trial court appointed counsel for respondent and set a hearing for October 12, 2004. A sheriff's deputy delivered notice to respondent.

On October 12, 2004, the trial court held a hearing on the petition for involuntary admission. Dr. Rohil Patil, a board-certified psychiatrist, examined respondent on October 5, 2004. Patil characterized respondent as being very paranoid, suspicious, delusional, and agitated. Patil diagnosed respondent with schizo-affective disorder. Respondent refused medication and became combative when medical personnel attempted to intervene. Patil believed respondent was (1) a person who was mentally ill and, because of his illness, was reasonably expected to inflict serious physical harm upon himself or another and (2) unable to provide for his basic physical needs so as to guard himself from serious harm. Patil recommended McFarland Zone Center as the least-restrictive placement.

William Hexum testified that respondent is his son. Respondent lives with Hexum and his wife. Hexum testified that respondent is "loud [and] flares up in a big roar." Steven Rathnow, a counselor at St. Mary's Hospital, characterized respondent as being "very, very delusional." Upon his arrival at the hospital, respondent told Rathnow that he needed to speak with President Bush immediately. During multiple visits with Rathnow, respondent advised Rathnow that he was a friend of President Bush and wished to speak with him. Rathnow assisted various medical personnel in administering respondent's medication. Respondent became loud and agitated on each occasion and other patients felt threatened by his behavior.

Respondent testified that he "would like to pay whatever I owe on driving on a suspended license, that is what I was brought up here for, arrested for driving on a suspended license."

The trial court found the allegations proved by clear and convincing evidence and found respondent to be a person subject to involuntary admission. The trial court ordered respondent to be hospitalized in the Department of Mental Health and Developmental Disabilities for up to 90 days. This appeal followed.

■ Before addressing the merits of respondent's appeal, we note that this case is moot. A trial court's order authorizing involuntary admission can only be in effect for up to six months. See 405 ILCS 5/4—611(a) (West 2002). Nevertheless, since this case involves an event of short duration that is capable of repetition yet evades review, we will address the issues raised by respondent. See *In re Robert S.*, 341 Ill. App. 3d 238, 247, 792 N.E.2d 421, 427 (2003).

■ Respondent first claims he was denied procedural due process because the first physician's certificate failed to name respondent and the second physician's certificate. was not "promptly filed." Section 3—703 of the Mental Health Code provides, in relevant part:

"If no certificate was filed, the respondent shall be examined separately by a physician, or clinical psychologist, or qualified examiner and by a psychiatrist. *** If, as a result of an examination, a certificate is executed, the certificate shall be promptly filed with the court." 405 ILCS 5/3—703 (West 2002).

In the present case, the first certificate signed by Dr. Barnett included a printed label above a line designated "(name)." The label identified respondent by name and provided additional identifying information. Respondent cites no authority that requires an examiner to place, in his own handwriting, respondent's name above the line designated "(name)."

Further, the record shows the second certificate signed by Dr. Patil stapled to the first certificate and the two certificates filed as a single document on October 6, 2004. The record shows the two certificates promptly filed with the court. In so concluding, we note it would have been better practice to file the two certificates separately. Respondent was not denied procedural due process because his name was not placed on the certificate in the examiner's own handwriting or because the two certificates were stapled and filed as a single document on October 6, 2004.

■ Respondent next claims he was denied procedural due process because he did not receive 36 hours' notice of examination as required by section 3—705 of the Mental Health Code (405 ILCS 5/3—705 (West 2002)). Respondent was not admitted to a mental-health facility

for examination under section 3—705. Respondent was admitted for examination under section 3—704 of the Mental Health Code.

Section 3—704(a) of the Mental Health Code provides as follows:

"The respondent shall be permitted to remain in his or her place of residence pending any examination. The respondent may be accompanied by one or more of his or her relatives or friends or by his or her attorney to the place of examination. If, however, the court finds that it is necessary in order to complete the examination the court may order that the person be admitted to a mental[-] health facility pending examination and may order a peace officer or other person to transport the person there. The examination shall be conducted at a local mental[-]health facility or hospital or, if possible, in the respondent's own place of residence. No person may be detained for examination under this [s]ection for more than 24 hours. The person shall be released upon completion of the examination unless the physician, qualified examiner[,] or clinical psychologist executes a certificate stating that the person is subject to involuntary admission and in need of immediate hospitalization to protect such person or others from physical harm. Upon admission under this [s]ection treatment may be given pursuant to [s]ection 3—608." 405 ILCS 5/3—704(a) (West 2002).

In the present case, respondent could not be detained for examination for more than 24 hours, and he was not. Although section 3—705 of the Mental Health Code references a 36-hour notice requirement, it also provides that "[i]f the respondent is admitted to a mental[-]health facility for examination under [s]ection 3—704, such notices may be delivered at the time of service of the order for admission." 405 ILCS 5/3—705 (West 2002). Here, respondent was admitted to a mental-health facility for examination under section 3—704, not under section 3—705. Respondent was not denied procedural due process because he did not receive 36 hours' notice of examination.

■ Respondent next argues no clear and convincing evidence warranted his involuntary admission.

A trial court's decision in an involuntary-admission proceeding is given great deference and will not be set aside at the appellate level, even if the reviewing court, after applying the clear-and-convincing standard, would have ruled differently, unless it is against the manifest weight of the evidence. *In re Bennett*, 251 Ill. App. 3d 887, 888, 623 N.E.2d 942, 944 (1993). A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence. *In re Jakush*, 311 Ill. App. 3d 940, 944, 725 N.E.2d 785, 789 (2000). The original trier of fact is in the best position to weigh the evidence presented and determine the credibility of the testifying witnesses. *Bennett*, 251 Ill. App. 3d at 888, 623 N.E.2d at 944.

Clear and convincing evidence established that respondent was mentally ill. Patil testified that respondent suffered from schizoaffective disorder and was paranoid, suspicious, delusional, and agitated. Further, both Patil and Rathnow testified that respondent refused medication and behaved in a threatening manner when approached by medical personnel. Rathnow believed that respondent was a danger to his elderly parents. The totality of the evidence relating to respondent's medical illness, delusional behavior, and paranoia established that he was a person who was mentally ill and, because of his illness, was reasonably expected to inflict serious physical harm upon himself or another.

The original trier of fact is in the best position to weigh the evidence presented and determine the credibility of the testifying witnesses. *Bennett*, 251 Ill. App. 3d at 888, 623 N.E.2d at 944. The trial court weighed the evidence and testimony and concluded that respondent was properly involuntarily admitted. Based upon the evidence, the trial court's decision was not against the manifest weight of the evidence.

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

COOK, P.J., concurs.

JUSTICE KNECHT, dissenting:

I agree with the majority on the due-process issue but conclude no clear and convincing evidence was presented to warrant respondent's involuntary admission. Respondent is mentally ill, but the evidence is woefully short of proving he is a danger to himself or others or is unable to provide for his basic physical needs.

Respondent's father was not afraid, nor had respondent ever threatened him. He described his son as a good worker who contributed to the expenses of the household and helped out around the house. His father was put off by his son's loud and explosive conversations. The only agitation and threatening behavior of respondent was when he was forcibly administered shots by the staff at the hospital.

A counselor testified respondent was a well-nourished, resourceful individual who probably could take care of himself.

The counselor thought respondent "might" victimize his parents because of the allegations in the petition of respondent being threatening toward his parents, and Amy Mundwiler saw respondent "throwing lite [sic] cigarettes near a full gas can." However, Mundwiler did not testify and is identified by name only in the record. No *evidence*

shows respondent threatened his parents, and no *evidence* shows respondent threw lighted matches near a gas can.

Respondent might benefit from involuntary admission. Perhaps he will bathe more often and be more compliant. Perhaps his presently harmless delusions will diminish. Medication may improve his disposition and modify his behavior. However, he should not suffer a loss of liberty and be forcibly administered painful injections simply to make him a more agreeable member of our society.

Mental-health proceedings are part of the court process. They are meant to be adversarial. The State bears a heavy burden of proof. This scanty record and the hearing conducted ought not pass muster in a free society.