*In re* GLORIA BATES, a Person Asserted to be Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Gloria Bates, Respondent-Appellant).

Third District   No. 3—99—0883

Opinion filed August 4, 2000.

Cynthia Z. Tracy, of Guardianship & Advocacy Commission, of Peoria, and Jeff Plesko, of Guardianship & Advocacy Commission, of Anna, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

The respondent, Gloria Bates, appeals from an order of the circuit court denying her petition for discharge from involuntary commitment. 405 ILCS 5/4—706 (West 1998). On appeal, she contends that the trial court erred in denying her petition. We agree with the respondent, and we therefore reverse.

The record reflects that on September 10, 1999, the trial court ordered the respondent to be involuntarily committed to either the Robert Young Mental Health Center or Zeller Mental Health Center (Zeller) for treatment of a mental illness for a period of time not to exceed 180 days. 405 ILCS 5/3—813 (West 1998). On October 26, 1999, the respondent filed a petition for discharge. 405 ILCS 5/3—900 (West 1998). On October 27, 1999, the trial court held a hearing on the petition.

At the hearing, the respondent initially argued that the original commitment order was void on its face for committing her to two facilities and for failing to hospitalize her in the least restrictive facility.

The trial court ruled that the commitment order was not void, and it therefore did not have jurisdiction to review those issues.

Next, the respondent testified that she was 48 years old and had a bachelor of arts degree in foods and nutrition. She was currently involuntarily committed to Zeller. According to the respondent, she did not belong at any mental facility. She said she was eating pizza with her mother and sister at home one day when the sheriff and two deputies pulled up to her home and took her away to Trinity, a medical center in Rock Island. She said neither she nor her mother called the police. In addition to being committed for no reason, she said she wanted to be discharged because the people at Zeller were giving her medications that were making her sick and giving her terrible side effects. During her time at Zeller, she had been on good behavior and had not threatened or caused any harm to anyone.

The respondent testified that her only problem was that she was unhappy, not mentally ill. She said everyone could be classified as mentally ill because everyone is unhappy to a certain degree. She wanted to return home to care for her mother, who is dying. She receives a small social security check and she manages to support herself on that check. She is able to take care of her personal needs and to fix her own meals. Finally, she noted that she wanted her freedom like any other normal person.

On cross-examination, the respondent noted that she did not believe that she was mentally ill when she was involuntarily committed on September 10. She said she has gotten more depressed since she has been at Zeller because she wants to be released.

The State then moved for a directed verdict, which the trial court denied.

Dr. Pratapkumar Attaluri, a psychiatrist at Zeller, testified that he had treated the respondent since September 13, 1999. He said that this was not the respondent's first admission and that he had treated her once before. He said the respondent is loud, disruptive, and has paranoid delusions. For example, she believes that her mother is dying when she is healthy. She calls government agencies and harasses them. She is currently on telephone restriction because of complaints from the community. Her main problem is that she does not have any insight, *i.e.*, she does not believe that she has any illness.

Dr. Attaluri diagnosed the respondent as a paranoid schizophrenic. She had been receiving court-ordered medication since September 29. However, he had not seen any improvement in her condition yet. He said it generally took four to six weeks on the medication to see a change in her condition. He said the respondent was not depressed, but she was angry and agitated. He said that she does not know what

she wants, and he did not think that the respondent had any place to live if she were discharged. In Dr. Attaluri's opinion, the respondent was unable to provide for her basic physical needs so as to guard herself from serious harm because of her illness. However, he did not know if she would inflict serious physical harm on herself or others in the near future because she would not speak to him.

On cross-examination, Dr. Attaluri said that when the respondent was brought to Zeller she would not eat because she believed the food was poisoned. However, he admitted that she was presently eating her meals and taking care of her basic personal needs.

At the end of the hearing, the trial court noted that it did not blame the respondent for questioning the reason she was being kept at Zeller. However, the court said that it knew of no reason that Dr. Attaluri would misstate to the court his professional findings. Therefore, the court denied the respondent's discharge petition.

On appeal, the respondent first contends that the commitment order entered on September 10, 1999, was void because the trial court committed her to two facilities and failed to hospitalize her in the least restrictive facility. In response, the State argues that the original commitment order was not void and this court therefore lacks jurisdiction to review the propriety of that order. We agree.

■ A judgment entered contrary to statute by a trial court having jurisdiction over the parties and the subject matter is voidable, not void, and is not subject to collateral attack. *People v. Davis*, 156 Ill. 2d 149, 619 N.E.2d 750 (1993). A trial court is not deprived of jurisdiction by an alleged failure of the trial court's order to reflect that treatment be the least restrictive alternative. *In re Devine*, 214 Ill. App. 3d 1, 572 N.E.2d 1238 (1991).

■ Here, the trial court had jurisdiction over the parties and the subject matter on September 10, 1999. The order entered by the court reflects that the cause came on for hearing pursuant to Article VIII of the Mental Health and Developmental Disabilities Code (405 ILCS 5/3—800 *et seq.* (West 1998)). The order also reflects that the respondent was personally present. Since the trial court had jurisdiction over the parties and the subject matter, the order entered by the court was voidable, not void. Therefore, that order is not subject to collateral attack and we shall not address it.

Next, the respondent contends that the trial court erred in denying her petition because: (1) she had proven a *prima facie* case for discharge; and (2) the State failed to clearly and convincingly prove that the petition should be denied.

■ A person is subject to involuntary commitment when that person has a mental illness and, because of that illness: (1) is reason-

ably expected to inflict serious physical harm upon herself or another in the near future; or (2) is unable to provide for her basic physical needs so as to guard herself from serious harm. 405 ILCS 5/1—119 (West 1998).

■ A person seeking discharge from involuntary commitment must first establish a *prima facie* case for discharge. *In re Katz*, 267 Ill. App. 3d 692, 642 N.E.2d 893 (1994). The State must then prove by clear and convincing evidence that the petition should be denied. *Katz*, 267 Ill. App. 3d 692, 642 N.E.2d 893. If the trial court finds that the party seeking discharge does not meet the standard for judicial admission, the court shall enter an order discharging that party. 405 ILCS 5/4—706 (West 1998).

■ We initially note that the parties disagree over the standard of review that applies in this case. The respondent argues that it is *de novo. American National Bank & Trust Co. v. Department of Revenue*, 242 Ill. App. 3d 716, 611 N.E.2d 32 (1993). The State, however, argues that the correct standard is whether the trial court's ruling was against the manifest weight of the evidence. See *In re Moore*, 301 Ill. App. 3d 759, 704 N.E.2d 442 (1998). We find the State's citation to authority to be most relevant. *Moore* involved the correctness of an involuntary commitment order, where the State's burden of proof was also clear and convincing. *Moore*, 301 Ill. App. 3d 759, 704 N.E.2d 442. Therefore, we shall apply the manifest weight of the evidence standard to this appeal.

■ Here, the trial court's order denying the respondent's petition was against the manifest weight of the evidence. First, the respondent made a *prima facie* case for discharge when she testified that she was not harmful to herself or others and that she could take care of her basic personal needs. The State did not refute the respondent's case by clear and convincing evidence. Although Dr. Attaluri testified that the respondent was mentally ill, that alone was not sufficient evidence to deny her petition for discharge. See *People v. Shelton*, 281 Ill. App. 3d 1027, 667 N.E.2d 562 (1996) (as a matter of due process, it is unconstitutional for a State to confine a harmless mentally ill person). The doctor also testified that the respondent was unable to provide for her basic physical needs so as to guard herself from serious harm. However, on cross-examination, he conceded that the respondent was eating the food at Zeller and that she was taking care of her basic needs. Dr. Attaluri also admitted that he did not know if the respondent posed a serious physical harm to herself or others because she would not talk to him. He merely said that the respondent was loud and disruptive during her time at Zeller, but he did not report any instances of physical misconduct to the court.

We agree with the trial court that Dr. Attaluri would have no reason to misstate his findings. However, we find that those findings were not based on sufficient evidence to prove that the respondent was not entitled to discharge. For that reason, we reverse the trial court's order denying the respondent's petition for discharge.

Accordingly, the judgment of the circuit court of Peoria County is reversed.

Reversed.

SLATER, P.J., and KOEHLER, J., concur.