NOTICE

Decision filed 06/18/10. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-08-0641

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| *In re* LANCE H., Alleged to Be a Person Subject to Involuntary Admission <br><br> (The People of the State of Illinois, Petitioner-Appellee, v. Lance H., Respondent-Appellant). | ) Appeal from the Circuit <br> ) Court of Randolph County. <br> ) <br> ) No. 08-MH-231 <br> ) <br> ) Honorable William A. Schuwerk, Jr., <br> ) Judge, presiding. |

_____

JUSTICE WEXSTTEN delivered the opinion of the court:

The respondent, Lance H., was involuntarily committed to the Chester Mental Health Center (Chester) on November 26, 2008. The respondent appeals, raising four points: (1) the State has neither the constitutional authority nor the statutory authority to civilly commit an asymptomatic individual, (2) the State's failure to present clear and convincing evidence of the statutory elements for an involuntary commitment violated the respondent's due process rights, (3) if the trial court properly committed the respondent, then the trial court violated the respondent's constitutional right to treatment in the least restrictive setting, and (4) neither the order nor the petition for continued involuntary admission complied with the Mental Health and Developmental Disabilities Code (the Code) (405 ILCS 5/1-100 *et seq.* (West 2008)). For the following reasons, we reverse.

BACKGROUND

The respondent was born in 1961 and has a long history of mental illness and criminal conduct dating back to 1979. Since then, he has spent most of his life either incarcerated for various crimes or institutionalized as a result of voluntary and involuntary commitments. His latest involuntary commitment, the subject of this appeal, began on November 20, 2008, after

1

David Dunker filed a petition seeking to administer involuntary treatment to the respondent pursuant to section 3-813 of the Code (405 ILCS 5/3-813 (West 2008)). The petition alleged that the respondent should be subject to involuntary treatment based on the following statements:

"[The respondent] was admitted to Chester *** on 2-29-08 as an [i]nvoluntary admission *** upon reaching his projected parole date. He signed [v]oluntary shortly after admission but then requested a discharge. He is chronically mentally ill and remains paranoid and aggressive[,] although he does follow his medication regimen. He lacks insight into his mental illness and remains very argumentative. Outside a controlled environment he would decompensate[,] thus becoming a danger to [him]self or others."

The petition did not include the names and addresses of any relative or close friends, nor did it explain why none were listed as required by section 3-601(b)(2) of the Code (405 ILCS 5/3-601(b)(2) (West 2008)). Instead, "N/A" was written in that section of the petition.

The petition was accompanied by two certificates of examination: one conducted on October 28, 2008, by Kathryn Holt, a clinical psychologist, and the other conducted on October 13, 2008, by A. Gesmundo, M.D., a psychiatrist. In addition to the two certificates, a 30-day treatment plan was also filed with the petition. The treatment plan indicated that the respondent maintains family contact on a regular basis.

On November 26, 2008, a commitment hearing was held. Tracy Mott, a licensed clinical social worker employed at Chester, testified that she served as the respondent's primary therapist for a number of years; that the respondent has had nine admissions since 1997; that "[h]e's currently not displaying symptoms of a mental illness, but he is taking medication for a mental illness"; that he has a history of psychotic symptoms as well as mood symptoms; that he becomes easily agitated at times; that he has delusions of persecution; that

2

his diagnosis was schizoaffective disorder, bipolar type, paraphilia not otherwise specified, and antisocial personality disorder; that in her opinion, the respondent was asymptomatic at this time because he is on medication; that he was last in restraints in May of 2008; that he was taking 2 milligrams of risperidone, 1,000 milligrams of Depakote, and 1 milligram of lorazepam twice a day; that she would not expect the respondent to continue to take his medication if he were released from a structured setting; that she would expect the respondent to decompensate and for some of his psychotic symptoms to recur if he were not taking his medication; that in her opinion the respondent is a person who should be subject to involuntary admission; that because of the respondent's mental illness, she would reasonably expect him to impose serious physical harm to others in the near future; that the respondent does not have a history of harming himself but that she did not "believe he would be able to take care of his own basic needs"; that it was her recommendation that the respondent be hospitalized for a period of 180 days; that the respondent was voluntarily taking his medication at the time of the hearing; and that he has been making improvement in his current setting and hospitalization.

The respondent testified that he felt that he did not need to be institutionalized because he knew how to take his medication and how to cook for himself and because he wanted to take care of his dying father. He testified that if released he would live with his family, that he had family that would take care of his basic physical needs, that he would continue to take his medication, and that he did not feel he would be a danger to himself or to others.

On November 26, 2008, the court entered an order finding that the respondent was subject to involuntary admission, and the respondent was ordered to be hospitalized in a Department of Human Services mental health or developmental center, which the court noted was at that time the least restrictive environment appropriate and available. On December 8, 2008, the respondent filed his notice of appeal *pro se*. On December 9, 2008, the court

appointed counsel for the respondent.

ANALYSIS

We begin our analysis by noting that the underlying case is moot. The order admitting the respondent expired on May 25, 2009; thus, we cannot grant effective relief to the respondent. Ordinarily we lack jurisdiction to consider moot issues, but we may consider these appeals if they fall within a recognized exception to the mootness doctrine. *In re Donrell S.*, 395 Ill. App. 3d 599, 602-03 (2009). This is a question of law, which we review *de novo*. *In re Alfred H.H.*, 233 Ill. 2d 345, 350 (2009).

The respondent contends that both the public-interest exception and the capable-of-repetition-yet-evading-review exception to the mootness doctrine apply. Because we find that the public-interest exception applies, we decline to consider whether the capable-of-repetition-yet-evading-review exception applies.

"The public[-]interest exception allows a court to consider an otherwise moot case when (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question." *In re Alfred H.H.*, 233 Ill. 2d at 355. "The 'public interest' exception is 'narrowly construed and requires a clear showing of each criterion.' " *In re Alfred H.H.*, 233 Ill. 2d at 355-56 (quoting *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 292 (2005)).

The respondent asserts the following reasons that the "public interest" exception is met: (1) the appeal raises constitutional issues and statutory issues that are matters of a public nature, *i.e.*, the constitutional issue of whether a court can involuntarily commit an asymptomatic individual and the statutory issues of whether the order, which fails to state findings of fact, and the petition, which fails to list the respondent's friends and family, comply with the Code, (2) "[a] published opinion by this [c]ourt would not only aid the

4

parties to similar actions, but it would also provide guidance to the circuits of the district in determining the issues presented in this appeal," and (3) "because this appeal raises both constitutional and statutory issues, it is highly likely that a decision in this appeal would impact future litigation." We find that all three criteria are satisfied in this case.

"First, the procedures which must be followed and the proofs that must be made before a court may authorize involuntary treatment to recipients of mental health services are matters of a public nature and of substantial public concern." *In re Mary Ann P.*, 202 Ill. 2d 393, 402 (2002). Here, there are questions involving the procedures and statutory guidelines to be followed; these are matters of considerable public concern. See *In re James S.*, 388 Ill. App. 3d 1102, 1105 (2009) (applying the public-interest exception to the mootness doctrine where the circuit court's order did not contain any findings of fact); *In re Phillip E.*, 385 Ill. App. 3d 278, 282 (2008) ("The statutory guidelines and requirements for a certain level of proof are not merely goals but are in place in order to provide the respondent with due process"). Second, we note that there have been at least four recent cases from Randolph County that this court has reversed for a failure to comply with the Code. See *In re Joseph M.*, 398 Ill. App. 3d 1086 (2010); *In re Donrell S.*, 395 Ill. App. 3d 599 (2009); *In re Michael H.*, 392 Ill. App. 3d 965 (2009); *In re Phillip E.*, 385 Ill. App. 3d 278 (2008). Thus, we believe there is a need for an authoritative determination for future guidance. Third, given the short duration of an order for an involuntary admission, we find there is a likelihood of the future recurrence of compliance issues without the opportunity for appellate review. See, *e.g.*, *In re Mary Ann P.*, 202 Ill. 2d at 402-03; *In re Michael H.*, 392 Ill. App. 3d at 970; *In re Phillip E.*, 385 Ill. App. 3d at 282. This is especially true given the history of the respondent's mental illness. See *In re Joseph M.*, 398 Ill. App. 3d at 1087 ("respondent's history of mental illness virtually guarantees that he will be the subject of petitions for the involuntary administration of psychotropic medication in the future"). In fact, the respondent

was a party to a compliance issue in *In re Donrell S.*, 395 Ill. App. 3d 599 (2009). Thus, we find that the issues in this case related to the procedures that must be followed in involuntary treatment cases satisfy the "public interest" exception to the mootness doctrine, and we will now consider the respondent's arguments that are related to the policies that must be adhered to in involuntary commitment cases.

"Involuntary commitment affects very important liberty interests, and thus those seeking to keep an individual so confined must strictly comply with procedural safeguards included within the [Code]." *In re Phillip E.*, 385 Ill. App. 3d at 284; *In re Robin C.*, 385 Ill. App. 3d 523, 527 (2008). "These safeguards are included within the Code to ensure that the mental health system does not become an oppressive tool rather than a means to serve the society in which we live." *In re Phillip E.*, 385 Ill. App. 3d at 284. "The Code's procedural safeguards are not mere technicalities." *In re Robert D.*, 345 Ill. App. 3d 769, 771 (2004). "Rather, they are essential tools to safeguard the liberty interests of respondents in mental health cases." *In re Robert D.*, 345 Ill. App. 3d at 771.

The respondent contends that the trial court's order must be reversed because, contrary to statute, neither it nor the record contains a statement of the court's findings of fact. The State concedes this point and notes that it requires a reversal. Section 3-816(a) of the Code provides in part as follows: "Every final order entered by the court under this Act shall be in writing and shall be accompanied by a statement on the record of the court's findings of fact and conclusions of law." 405 ILCS 5/3-816(a) (West 2008). In *In re James S.*, we recently reversed the circuit court on this exact issue, noting that "in mental health cases, strict compliance with the Code is compelling because liberty interests are involved." 388 Ill. App. 3d at 1107 (citing *In re Frances K.*, 322 Ill. App. 3d 203, 208 (2001)). Thus, as in *In re James S.*, because the circuit court failed to make written findings of fact and conclusions of law on the record as it was required to do under the Code, we reverse.

6

The respondent next avers that the petition for involuntary admission was defective because, contrary to statute, it failed to include the names and addresses of family or friends. The State counters that the failure of the petition to name relatives or friends does not require a reversal because petitions for involuntary admission should be read in their entirety and that, in this case, the required certificates attached to the petition both aver that the examiners informed the respondent of the purpose of the examination and informed him of his right to speak to a relative, friend, or attorney before the examination but the respondent declined that opportunity. We find the State's argument unpersuasive.

Section 3-601(b) of the Code provides in relevant part as follows:

"(b) The petition shall include all of the following:

\*\*\*

2. The name and address of the spouse, parent, guardian, substitute decision maker, if any, and close relative, or if none, the name and address of any known friend of the respondent whom the petitioner has reason to believe may know or have any of the other names and addresses. If the petitioner is unable to supply any such names and addresses, the petitioner shall state that diligent inquiry was made to learn this information and specify the steps taken." 405 ILCS 5/3-601(b)(2) (West 2008).

"The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." *In re Mary Ann P.*, 202 Ill. 2d at 405. "The most reliable indicator of the legislature's intent is the language used in the statute, which must be given its plain and ordinary meaning. *In re Mary Ann P.*, 202 Ill. 2d at 405. "Where the statutory language is clear and unambiguous, it will be given effect without resort to other aids of construction." *In re Mary Ann P.*, 202 Ill. 2d at 405.

Here, the statute is clear and unambiguous, stating that the petition *shall* include the

7

names of any relatives or known friends or, if none can be found, the petition "*shall* state that diligent inquiry was made to learn this information and specify the steps taken." (Emphasis added.) 405 ILCS 5/3-601(b)(2) (West 2008). The statute does not provide any exceptions to this requirement, and the statute employs the word "shall," which the supreme court "has construed as a clear expression of legislative intent to impose a mandatory obligation." *People v. O'Brien*, 197 Ill. 2d 88, 93 (2001); see, *e.g.*, *Village of Winfield v. Illinois State Labor Relations Board*, 176 Ill. 2d 54, 64 (1997); *People v. Thomas*, 171 Ill. 2d 207, 222 (1996); *In re James S.*, 388 Ill. App. 3d at 1107; *In re Williams*, 305 Ill. App. 3d 506, 510 (1999). Thus, there is no question that the abbreviation "N/A" did not meet the statutory requirements, and the respondent's procedural rights were violated. See *In re Wiessing*, 229 Ill. App. 3d 737, 739 (1992) ("According to the report, although respondent has little contact with his family, there is no excuse for failure to contact a close relative as required by the statute. The issue as to compliance with section 3-601(b)(2) is not whether there was substantial compliance. The petition fails to show any compliance. To say this petition was adequate would render meaningless the provisions of section 3-601(b)(2) and eliminate an important protection to persons similarly situated to respondent"). " 'Noncompliance with statutory provisions of the Code renders a judgment entered under such circumstances erroneous and of no effect.' " *In re James S.*, 388 Ill. App. 3d at 1107 (quoting *In re Frances K.*, 322 Ill. App. 3d at 208); see also *In re Michael D.*, 306 Ill. App. 3d 25, 27 (1999) ("[S]ince the legislature is presumed to know that the remedy for violating the procedural rules of the Mental Health Code is reversal of an involuntary commitment order [citations], if it had desired a different remedy for the particular procedural rule at issue here, it could have provided for it in the statute. It did not. Accordingly, the error of the court was not harmless and reversal is warranted"). For this reason also, a reversal is required.

We acknowledge that when faced with this issue, other districts of this court have

8

ruled that a reversal may not be required when the respondent suffers no prejudice as a result of the procedural deviation. *In re Robin C.*, 385 Ill. App. 3d at 527-28; *In re Tommy B.*, 372 Ill. App. 3d 677, 684-85 (2007); *In re Denise C.*, 348 Ill. App. 3d 889, 892-93 (2004); *In re Robinson*, 287 Ill. App. 3d 1088, 1904 (1997); *In re Adams*, 239 Ill. App. 3d 880, 884-85 (1993). *Contra In re Michael D.*, 306 Ill. App. 3d at 28 (finding that where the section of the Code is mandatory and dispositive, there is no requirement of prejudice). In doing so, these courts have relied primarily on the supreme court's decision in *In re Nau*, 153 Ill. 2d 406, 419 (1992), or the progeny resulting therefrom, where the court held that procedural deviations from the Code do not require a reversal of a commitment order if the defects could have and should have been objected to immediately, or could have been easily cured if objected to immediately, and in the end made no difference anyway. In that case, the court held that strict compliance with the notice requirement of section 3-611 of the Code (Ill. Rev. Stat. 1989, ch. 91½, par. 3-611 (now 405 ILCS 5/3-611 (West 2008))), requiring that the respondent receive notice of the time and place of the hearing, was not required when the purpose behind the statute was satisfied, *i.e.*, the respondent knew about the hearing. *In re Nau*, 153 Ill. 2d at 419. Similarly, the court found that a reversal was not required for the failure to comply with the requirement under section 3-813 of the Code (Ill. Rev. Stat. 1989, ch. 91½, par. 3-813 (now see 405 ILCS 5/3-813 (West 2008))) that a petition be filed prior to the expiration of the initial order when the purpose behind the statute was not frustrated by the one-day delay in filing. *In re Nau*, 153 Ill. 2d at 422-23. Here, the purpose behind section 3-601(b)(2) was not satisfied by the abbreviation "N/A." Nor was the purpose behind the statute met by the inclusion of the required certificates attached to the petition. In fact, reading the petition and its attachments in their entirety leads us to the opposite conclusion: that providing a list of the petitioner's family and friends was applicable. Indeed, the treatment plan attached to the petition indicated that the respondent maintained family

9

contact on a regular basis, and at the hearing, the respondent testified that he no longer wanted to be institutionalized so that he could take care of his dying father, that if released he would live with his family, and that his family would take care of his basic physical needs. There was no excuse for not following the statutory requirement in this case. See *In re Ellis*, 284 Ill. App. 3d 691, 694 (1996) (finding no excuse for the State's failure to comply with the requirements of section 3-601(b)(2) where the State admitted that the respondent had been previously hospitalized on approximately 20 occasions and where the respondent's mother maintained contact with the mental health center); *In re Adams*, 239 Ill. App. 3d 880, 885 (1993) ("Where the outcome of the commitment hearing may have been prejudiced by the State's failure to strictly comply with the Code, reversal of the petition is proper"). Thus, a reversal is required on this issue as well.

Because we find that the trial court's order and the petition were fatally flawed, we need not address the respondent's additional contentions. We do, however, feel compelled (as we have done in the past on this exact issue) to briefly address the respondent's argument that even if the trial court properly committed the respondent, the trial court violated the respondent's constitutional right to treatment in the least restrictive setting. Section 3-811 of the Code mandates that "[t]he court shall order the least restrictive alternative for treatment which is appropriate." 405 ILCS 5/3-811 (West 2008). Here, there was absolutely no proof presented that continued hospitalization in Chester was the least restrictive alternative available to the respondent. Without any evidence, we have no idea why the trial court made this determination. Thus, the trial court's order also violates the respondent's due process rights, and the judgment could be reversed on this ground as well. See *In re Phillip E.*, 385 Ill. App. 3d at 286.

"Procedural deficiencies and mistakes in mental-health cases 'suggest a lack of attention to process' [citation], and we reiterate the need for greater attention to detail in

10

complying with the statutory requirements in these cases." *In re Robin C.*, 385 Ill. App. 3d at 528. As the Illinois Supreme Court recently stated in *In re Andrew B.*, No. 107498, slip op. at 11 (February 19, 2010), we "remind our courts to be ever vigilant to protect against abuses of power and preserve the fundamental liberty interests of individuals subjected to involuntary-admission proceedings."

## CONCLUSION

For the foregoing reasons, the judgment of the Randolph County circuit court is reversed.


Reversed.


CHAPMAN and STEWART, JJ., concur.

NO. 5-08-0641

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | |
|---|---|
| *In re* LANCE H., Alleged to Be a Person Subject to Involuntary Admission | ) Appeal from the Circuit<br>) Court of Randolph County.<br>) |
| (The People of the State of Illinois, Petitioner-Appellee, v. Lance H., Respondent-Appellant). | ) No. 08-MH-231<br>)<br>) Honorable William A. Schuwerk, Jr.,<br>) Judge, presiding. |

**Opinion Filed**:       June 18, 2010

**Justices**:     Honorable James M. Wexstten, J.,

Honorable Melissa A. Chapman, J., and
Honorable Bruce D. Stewart, J.,
Concur

**Attorneys for Appellant**    Veronique Baker, Director, Barbara A. Goeben, Laurel Spahn, Patti Werner, Staff Attorneys, Legal Advocacy Service, Guardianship & Advocacy Commission, 4500 College Avenue, Suite 100, Alton, IL 62002

**Attorneys for Appellee**    Hon. Randall Rodewald, State's Attorney, Randolph County Courthouse, Chester, IL 62233; Patrick Delfino, Director, Stephen E. Norris, Deputy Director, Kendra S. Peterson, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, Fifth District Office, 730 E. Illinois Highway 15, P.O. Box 2249, Mt. Vernon, IL 62864