2018 IL App (3d) 170155

Opinion filed April 24, 2018

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2018

| | | |
|---|---|---|
| *In re* WILMA T., | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| (The People of the State of Illinois, | ) | Rock Island County, Illinois, |
| | ) | |
| Petitioner-Appellee, | ) | Appeal Nos. 3-17-0155 and 3-17-0156 |
| | ) | Circuit Nos. 17-MH-3 and 17-MH-4 |
| v. | ) | |
| | ) | |
| Wilma T., | ) | Honorable |
| | ) | Frank R. Fuhr, |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the judgment of the court, with opinion.
Presiding Justice Carter concurred in the judgment and opinion.
Justice Schmidt dissenting, with opinion.

**OPINION**

¶ 1        Respondent, Wilma T., appeals from the circuit court's orders for involuntary commitment and involuntary administration of psychotropic medication, arguing the court erred by granting (1) the order for involuntary commitment where she was a voluntarily admitted patient and did not file a written request for discharge, and (2) the order for involuntary administration of psychotropic medication where respondent was not presented written information about less restrictive alternatives to medication. We reverse.

FACTS

¶ 3        Respondent is a 62-year-old homeless woman. On January 26, 2017, respondent was

brought to the emergency room at Trinity Hospital by the police after she was found in a home

that was not her own. She voluntarily admitted herself to the Robert Young Mental Health

Center (Robert Young) at the hospital.

¶ 4        On February 17, 2017, a nurse at Robert Young filed a petition for respondent's

involuntary admission. The petition stated respondent had been a voluntary admittee, but had

"submitted written notice of [her] desire to be discharged." The petition further stated respondent

"threatens staff members," "is non-compliant with medications," "is in denial of her mental

illness," and "believes she is pregnant" and married to Barack Obama. Respondent's request for

discharge was not signed by respondent, but stated, "[p]atient requesting discharge, but refusing

to sign." It was signed by three nurses. Simultaneously, Dr. Rickey L. Wilson filed a petition for

the administration of psychotropic medications requesting that respondent receive 25 to 100

milligrams of Risperdal Consta because respondent refused medication, presented as a potential

harm to others, and could not provide for her own safety in a less restrictive environment.

¶ 5        A hearing was held on the petition on March 2, 2017. Wilson was accepted as an expert

in the field of psychiatry and general medicine. Wilson stated he was employed at Robert Young

as a psychiatric hospitalist. He provided inpatient care for respondent and had seen her Monday

through Friday since January 30, 2017. He had the opportunity to examine respondent and

diagnosed her with chronic schizophrenia paranoid subtype. Wilson did not believe respondent

was able to understand her need for treatment. He stated she refused to take medication, and he

believed respondent could cause herself or others to be put into harm's way. He noted that he had

observed her in an agitated state where she was threatening one of the nurses with a metal fork.

Wilson did not believe respondent could care for her needs based, in part, on her recent, prior admissions at Robert Young, stating:

> "I feel that because of her lack of insight she needs to be stabilized and improved before discharge. And in her present untreated condition, I do not feel that she could keep herself safe and provide for basic needs, and I base that on the fact that those three very rapid admissions prior to my arrival here, but that's in her records, showing that she could not sustain herself on an outpatient basis."

Wilson created a treatment plan for respondent, which included medication. He noted she was also attending groups, but they were "not making a difference in her mental state." When asked if he had considered alternative treatments for respondent, Wilson stated, "She has had community support services prescribed in the past. She never complied with that[.]" With the medication, Wilson hoped respondent would stabilize within six weeks to two months. He recommended she remain at an inpatient facility. He believed respondent's condition would deteriorate.

¶ 6　　　On cross-examination, Wilson was asked if respondent was in the facility voluntarily. Wilson stated, "She would not sign a five day notice for discharge. *** But she would say that she might want to leave but then she would change her mind, so it would be considered voluntary." He further stated, "She would not sign the form, but there were two witnesses to her request to leave." The court granted the petition.

¶ 7　　　The case then proceeded to a hearing on the petition for administration of psychotropic medication. Wilson again testified as an expert and stated respondent has shown poor judgment and disruptive behavior. Based on Wilson's review of respondent's medical records, her symptoms continue because she does not take medication. He stated, "I believe that medication

3

is warranted. She does have a history of partially responding to medication in the past." Wilson recommended Risperdal Consta injections every two weeks. He stated respondent had been on the medication previously. The appropriate response time for each of the medications was three months. Wilson stated he discussed the medication with respondent and the nurses gave her a pharmacy printout of side-effects, benefits, and risks of the proposed medication. When asked if he considered less restrictive alternatives to the medications, Wilson stated, "She is attending group therapy. It is not effective. I have offered her oral medications, which she has refused." There was no indication respondent was given written information regarding alternatives to the treatment. The court granted the petition.

¶ 8                                                    ANALYSIS

¶ 9        On appeal, respondent argues, *inter alia*, that the court erred by granting (1) the petition for involuntary commitment where respondent was a voluntary patient and did not present written notice of her desire to be discharged, and (2) the petition for involuntary administration of psychotropic medication where she was not given written information regarding alternatives to the proposed treatment. The State argues this appeal should be dismissed as moot. We agree the appeal is moot, but find that the capable of repetition yet evading review exception to the mootness doctrine applies. We further find the court erred by granting the petitions based on noncompliance with the statutes regarding (1) involuntary admission of theretofore voluntarily admitted patients, and (2) written information of alternatives to the proposed psychotropic medication.

¶ 10                                                 I. Mootness

¶ 11        At the outset, the State argues this appeal should be dismissed as moot. The 90-day involuntary commitment order that is the subject of this appeal has already expired. Therefore,

this appeal is moot. *In re Robert S.*, 213 Ill. 2d 30, 45 (2004). Generally, courts of review do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected by the court's decision. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). However, there are certain exceptions to the mootness doctrine. *Id.* at 355-63. Whether one of these exceptions applies to the appeal must be determined on a case-by-case basis, considering the exception in light of the facts and claims raised. *Id.* at 355, 364.

¶ 12        Respondent urges us to consider her appeal under the capable of repetition yet evading review exception. "This exception applies when the complaining party demonstrates that (1) the challenged action is too short in duration to be fully litigated prior to its cessation and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again." *In re Amanda H.*, 2017 IL App (3d) 150164, ¶ 26. The State admits the first element is satisfied by the 90-day order. Thus, the only question is whether there is a reasonable expectation that respondent would be subject to the same action again. *Id.*

> "To satisfy this criterion, there must be 'a substantial likelihood that [an] issue presented in the instant case, and any resolution thereof, would have some bearing on a similar issue presented in a subsequent case' involving the respondent. [Citation.] For example, if the respondent's appeal raises a constitutional issue or challenges the trial court's interpretation of a statute, the exception applies because the court's resolution of these issues could affect the respondent in subsequent commitment proceedings." *Id.* ¶ 27 (quoting *Alfred H.H.*, 233 Ill. 2d at 360).

¶ 13        Here, both of respondent's issues satisfy the second element. Respondent has a long history of mental illness, including prior hospitalizations in the same hospital. Wilson noted

5

respondent had three recent, prior admissions to Robert Young before he was employed there. Respondent challenges the circuit court's interpretation of section 3-403 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3-403 (West 2016)) regarding the petition for involuntary commitment filed while she was a voluntary patient. As respondent is a homeless woman whom the police have transported to the hospital on more than one occasion, it is substantially likely that such an issue will affect respondent in the future.

¶ 14 Moreover, we take judicial notice of our own recent case in which respondent challenged one of the same issues that she is raising here: the failure to provide her with written notification of the alternatives to the proposed treatment. *In re Wilma T.*, No. 3-16-0701 (2017) (unpublished summary order under Illinois Supreme Court Rule 23(c)); see also *People v. Davis*, 65 Ill. 2d 157, 161 (1976) (quoting McCormick on Evidence, § 330, at 763 (2d ed. 1972)) ("[t]aking judicial notice of matters of record in other cases in the same court is simply an application of the increasingly recognized principle that matters susceptible of judicial notice include facts 'capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy.' "). The fact that the same problem has affected respondent twice, shows that this issue could affect her again in future proceedings. We now turn to the merits of the case.

¶ 15 II. Involuntary Commitment

¶ 16 Respondent first argues the order granting the 90-day involuntary commitment was improper as she was a voluntary patient and did not provide, in writing, her intent to be discharged. Specifically, respondent argues the order was "void" for noncompliance with section 3-403 of the Code. 405 ILCS 5/3-403 (West 2016).

¶ 17 The State concedes that respondent did not file a written notice of her desire to be discharged and, therefore, section 3-403 of the Code was not satisfied and submits forfeiture

6

could apply. Nonetheless, the State believes that we should consider the issue under plain error. "The plain-error doctrine set forth in Supreme Court Rule 615(a) [citation] applies to appeals in criminal cases, not civil cases." *In re Charles K.*, 405 Ill. App. 3d 1152, 1163 (2010). However, " ' "[E]rrors demonstrating noncompliance with the statutory provisions that appear on the face of the record may render a judgment erroneous even if not raised at trial; furthermore, such errors may be considered on appeal under a doctrine analogous to plain error." ' " *In re George O.*, 314 Ill. App. 3d 1044, 1049 (2000) (quoting *In re Rovelstad*, 281 Ill. App. 3d 956, 966 (1996), quoting *In re Martens*, 269 Ill. App. 3d 324, 327 (1995)). Therefore, we will consider the issue.

¶ 18        Section 3-403 states:

> "A voluntary recipient shall be allowed to be discharged from the facility at the earliest appropriate time, not to exceed 5 days *** after he gives any treatment staff person written notice of his desire to be discharged unless he either withdraws the notice in writing or unless within the 5 day period a petition and 2 certificates [for the voluntary recipient's involuntary commitment] are filed with the court." 405 ILCS 5/3-403 (West 2016).

The general rule is that "a written request for discharge must precede the instituting of emergency involuntary commitment proceedings against voluntarily admitted patients." *In re James E.*, 207 Ill. 2d 105, 114 (2003). An oral request is not sufficient "to activate the statutory requirements for initiating an involuntary admission proceeding." *In re Splett*, 143 Ill. 2d 225, 234 (1991). Where the record fails to show that the respondent submitted a written request for discharge prior to the initiation of involuntary admission proceedings, the involuntary admission order is invalid. *Id.* at 235.

7

¶ 19    In this case, respondent was a voluntary patient and did not file a written notice for discharge. Consequently, involuntary admission proceedings should not have been commenced. We accept the State's concession and find the involuntary commitment order was invalid.

¶ 20    In coming to this conclusion, we note, as an aside, that the State takes issue with respondent's statement that the involuntary commitment order was "void." "A judgment entered contrary to statute by a trial court having jurisdiction over the parties and the subject matter is voidable, not void." *In re Bates*, 315 Ill. App. 3d 736, 739 (2000). As the court had jurisdiction, the State is correct that the order was not void. However, this distinction does not change the above analysis.

¶ 21                    III. Involuntary Admission of Psychotropic Medication

¶ 22    Respondent further argues she was not given written information regarding alternatives to the proposed treatment. Section 2-102(a-5) of the Code requires the recipient of psychotropic medication to be notified in writing of the alternatives to the proposed treatment. 405 ILCS 5/2-102(a-5) (West 2016). This requirement is not satisfied by verbal advice. *In re Vanessa K.*, 2011 IL App (3d) 100545, ¶ 20.

¶ 23    Here, respondent did not receive written information regarding alternatives to the proposed treatment. The State points out that "respondent lacked the ability to understand any written information that may have been communicated regarding alternative treatment options" and "there is no evidence to show that she understood the information provided." Due to this lack of comprehension by respondent, the State urges this court to conclude that the distribution of information respondent could not process, was an unnecessary formality.

> "[S]ection 2-102(a-5) of the Code must be strictly complied with, so as to secure the liberty interest that a respondent has in refusing invasive medication.

[Citation.] Because of this, verbal notice does not constitute compliance with section 2-102(a-5) of the Code, and a respondent cannot waive his [or her] right to written notice. [Citation.]

    \*\*\* If such notice is not given, then the State cannot establish that a respondent lacks the capacity to make a 'reasoned decision' about treatment, because the written notice forms the basis upon which such a decision can be made." *In re Katarzyna G.*, 2013 IL App (2d) 120807, ¶¶ 16-17.

Strict compliance is required. Thus, the State cannot establish that a respondent lacks the capacity to make a reasoned decision without the respondent receiving prior written notice.

¶ 24    We would be remiss if we did not note that this is the second time our court has determined that respondent's involuntary admission of psychotropic medication order was improper for the same reason. *Wilma T.*, No. 3-16-0701. Hopefully, the parties will take the necessary steps to ensure strict compliance occurs from this point forward.

¶ 25                       CONCLUSION

¶ 26    The judgment of the circuit court of Rock Island County is reversed.[1]

¶ 27    Reversed.

¶ 28    JUSTICE SCHMIDT, dissenting:

¶ 29    I would dismiss this case as moot. The fact that respondent may face involuntary admission and involuntary medication, again, in the future is not a sufficient basis to make the second element of the mootness exception. *Alfred H.H.*, 233 Ill. 2d at 358-61.

---

    [1]We note respondent raises a series of other arguments. As we reverse both the involuntary commitment and involuntary administration of psychotropic medication based on the grounds above, we offer no opinion on the mootness considerations or merits of the other issues.

¶ 30         There is nothing in the majority's order that constitutes anything other than a recitation of existing case law. Therefore, the majority's resolution of the issues in this case should have no effect on respondent in subsequent commitment proceedings. *Id.* at 360.

¶ 31         The majority laments the fact that no one below took note of a summary order issued in a prior case. It seems unrealistic to believe that circuit court judges, even assuming it is the same judge, will somehow remember a prior summary order. And, again, the fact that it was a summary order would lead one to believe it could have broken no new law and, therefore, was nothing more than a recitation of applying existing law to the facts, which, it seems by definition, takes the matter out of the realm of an exception to the mootness doctrine.

¶ 32         I therefore respectfully dissent.