**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 170154-U

Order filed January 19, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

_____

| | | |
|---|---|---|
| *In re* ANGELA C., | ) | Appeal from the Circuit Court |
| A Person Found Subject to Involuntary | ) | of the 13th Judicial Circuit, |
| Commitment and Involuntary Medication | ) | LaSalle County, Illinois. |
| | ) | |
| (The People of the State of Illinois | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-17-0154 |
| | ) | Circuit No. 17-MH-3 |
| v. | ) | |
| | ) | |
| Angela C., | ) | The Honorable |
| | ) | H. Chris Ryan, Jr. |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justice Lytton concurred in the judgment.
Justice Schmidt dissented.

_____

**ORDER**

*Held*: (1) The respondent's appeal of the trial court's orders subjecting her to involuntary hospitalization and the involuntary administration of psychotropic medication was reviewable under the "capable of repetition yet evading review" exception to mootness; (2) the State's petitions for involuntary commitment and involuntary medication were fatally deficient; and (3) the respondent received ineffective assistance of counsel.

¶ 2        The trial court ordered the Respondent-Appellant, Angela C. (Angela) subject to involuntary commitment at an inpatient mental health treatment facility and subject to involuntary treatment through the administration of psychotropic medications. Angela appeals those judgments, arguing that the State failed to present evidence as to certain essential elements of the involuntary commitment and involuntary medication statutes in the Mental Health and Developmental Disabilities Code (the Code) (405 ILCS 5/1-100 *et seq.* (West 2016)) and otherwise failed to satisfy various mandatory requirements of the Code.

¶ 3                                      FACTS

¶ 4        Prior to the events at issue in this case, Angela had worked as a union electrician in Joliet and in Honolulu, Hawaii. After she was laid off, she applied for housing through the LaSalle County Housing Authority and began living in a homeless shelter. On January 31, 2017, Angela had breakfast in the Hi-Way restaurant in Ottawa before vising the gift shop at OSF St. Elizabeth Medical Center (OSF). She offered a hand-sewn quilt, a hand-sewn bag, and a few other items to the gift shop. Two women from the hospital spoke with Angela and suggested that she speak with hospital personnel about obtaining an "appropriate prescription." Angela explained that she used medical marijuana and was licensed to do so. She also indicated that she is a "metaphysical healer" who believed in angels and God. She did not like the hospital staff members' insinuation that she was "crazy" because of her beliefs.

¶ 5        That same day, an OSF physician examined Angela and hospital staff completed a petition for Angela's involuntary admission and admitted her to the hospital. The petition did not include the names of Angela's relatives. The following day, Dr. Wajid Hussain, a psychiatrist who had been practicing for only one year and who had just received board certification, filed a petition for involuntary medication. Although the petition stated the

statutory elements required to authorize the involuntary administration of medication under the Code, it included no facts showing why those statutory elements were met in Angela's case. The trial court appointed the LaSalle County Public Defender to represent Angela.

¶ 6        The involuntary commitment and medication hearings were held on February 6, 2017. Dr. Hussain testified that "we can't be sure at this moment" whether Angela had a mental illness and that he needed "to find out what exactly" was causing Angela to go from shelter to shelter since she returned to Illinois a year earlier. Dr. Hussain stated that "there may be some organic problem," "some tumor," or the use of "some street drug." He diagnosed Angela with "bipolar mania with predominantly psychotic features" because Angela believed she was psychic and could talk to angels. Dr. Hussain was "not sure about [Angela's] previous history" and thought she could be allergic to some psychotropic medications. He did not testify that he had investigated Angela's history or inquired into her medical marijuana status.

¶ 7        Dr. Hussain testified that he was pursuing commitment only on the ground that Angela was unable to provide for her basic physical needs. He stated that, although Angela appeared disheveled at OSF, she was otherwise in good physical health and was not "starvating [*sic*] or anything." When asked by the State whether he believed Angela was unable to provide for her basic physical needs, Dr. Hussain answered, "Yes. To a certain extent, yeah." The State did not ask Dr. Hussain any specific questions relating to Angela's ability to obtain food or shelter or to provide for her medical needs. Dr. Hussain recommended inpatient hospitalization as the "only option" because Angela had refused outpatient treatment and medicating Angela was "the primary thing at this moment." He further stated that, if Angela were admitted as an inpatient, the hospital could perhaps do imaging tests to determine whether she actually had a mental illness.

¶ 8 The trial court ordered the State to provide a complete predispositional report. The State failed to do so. Instead, it submitted a one-page preliminary treatment report. Angela's counsel did not object to the admission of the State's truncated report or argue that it violated the Code or the trial court's order.

¶ 9 Angela testified that she did not believe that she needed to be treated at a hospital. She felt that she needed "a shower and a place to stay." She said she was never unwilling to "cooperate with the hospital." Instead, she was unwilling to take what she believed to be inappropriate medication when the providers had not considered either drug interactions or her allergies. She noted that the hospital had given her Tylenol despite the fact that she is allergic to acetaminophen. Angela testified that she felt she was "gifted," and she believed it is inappropriate to "overmedicate somebody because you think they're psychotic." The trial court found Angela subject to involuntary commitment and inpatient treatment.

¶ 10 During the subsequent involuntary medication hearing, the State questioned Dr. Hussain about the risks, benefits, and dosages of three medications (Risperdal, Haldol, and Zyprexa) even though the involuntary medication petition filed by the State had requested to administer only two (Risperdal and Haldol). Angela's counsel did not object to the discrepancy. The State did not ask Dr. Hussain any questions about Angela's capacity to make a reasoned decision to accept or refuse medication. It did not ask Dr. Hussain whether written medication information had been provided to Angela. Nor did the State ask Dr. Hussain questions relating to other statutory elements of the involuntary medication statute. Angela's counsel did not object to the State's failure to prove that any such written information was provided or to the lack of proof as to any other required statutory elements. Dr. Hussain testified that he wanted to perform a CAT scan on Angela, even though this test was not requested in the petition. Angela's counsel did not object.

¶ 11    The trial court found Angela subject to involuntary medication for a period up to 90 days. The order included Zyprexa and the CAT scan, neither of which were included in the State's petition. Although Dr. Hussain gave no opinion as to Angela's capacity to make a reasoned decision to accept or refuse medication, the trial court found that the State had proven that Angela lacked such capacity. The court did not advise Angela of her right to appeal. Nevertheless, Angela filed this timely appeal.

¶ 12                                    ANALYSIS

¶ 13                                   1. Mootness

¶ 14    Angela argues that the trial court's orders granting the State's petitions for involuntary admission and involuntary administration of psychotropic medications must be reversed on various grounds. Before addressing the merits of the respondent's arguments, we must first address the threshold issue of mootness. The 90-day involuntary commitment order that is the subject of this appeal has already expired, and Angela has been discharged from treatment. Accordingly, this appeal is moot. *In re Robert S.*, 213 Ill. 2d 30, 45 (2004); see also *In re J.T.*, 221 Ill. 2d 338, 349-50 (2006).

¶ 15    Generally, courts of review do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected by the court's decision. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). However, there are three established exceptions to the mootness doctrine: (1) the "public-interest" exception, applicable where the case presents a question of public importance that will likely recur and whose answer will guide public officers in the performance of their duties; (2) the "capable-of-repetition" exception, applicable to cases involving events of short duration that are capable of repetition, yet evading review; and (3) the "collateral-consequences exception," applicable where the involuntary treatment order could

return to plague the respondent in some future proceeding or could affect other aspects of the respondent's life. *Id.* at 355-63. Whether a particular appeal falls within one of these exceptions must be determined on a case-by-case basis, considering each exception in light of the relevant facts and legal claims raised in the appeal. *Id.* at 355, 364; *In re Daryll C.*, 401 Ill. App. 3d 748, 752 (2010).

¶ 16    The "capable of repetition" exception applies when the complaining party demonstrates that (1) the challenged action is too short in duration to be fully litigated prior to its cessation, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again. *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998). In this case, there is no question that the first criterion has been met, as the trial court's 90-day commitment and medication orders were of such short duration that they could not have been fully litigated prior to their cessation. Thus, the only question is whether there is a reasonable expectation that the respondent will personally be subject to the same action again. That occurs when the resolution of the issue raised in the present case would be likely to "affect a future case involving the respondent" or to "have some bearing on a similar issue presented in a subsequent case" involving the respondent. *Alfred H.H.*, 233 Ill. 2d at 360.

¶ 17    This case satisfies that standard. Angela has a history of living in homeless shelters and she was evicted from one of those shelters due to certain behaviors that were interpreted as evidencing a mental illness. Moreover, in explaining why he believed that Angela was unable to care for herself, Dr. Hussain testified that Angela had been admitted to the hospital at least once in the previous two years. Given this history, it is reasonably likely that Angela will face additional involuntary admission and involuntary treatment proceedings in the future. *In re Joseph M.*, 405 Ill. App. 3d 1167, 1175 (2010) (finding likelihood of recurrence and applying

capable of repetition exception to mootness where respondent had a history of mental illness and had been subject to prior involuntary admissions).

¶ 18    In addition, the resolution of the legal issues raised in the present case would be likely to affect a future case involving Angela or to "have some bearing on a similar issue presented in a subsequent case" involving Angela. *Alfred H.H.*, 233 Ill. 2d at 360.   Angela contends that the State and the trial court failed to comply with certain procedural and substantive requirements of the Code. Specifically, among other things, she argues that the trial court erred by granting the involuntary commitment petition even though the State:  (1) failed to include the names of Angela's relatives (or reasons why a diligent effort to obtain such names was unsuccessful) in the involuntary commitment petition, as required by section 3-601(b)(2) of the Code (405 ILCS 5/3–601(b)(2) (West 2016)) and (2) failed to file a predisposition report as required by section 3–801 of the Mental Health Code (405 ILCS 5/3–810 (West 2016)) or to present oral testimony containing all the information required by that section.  The State concedes these errors and acknowledges that they would be reversible if we chose to address them.

¶ 19    Angela further argues, and the State concedes, that the trial court erred by granting the State's involuntary medication petition even though the State: (1) presented no evidence suggesting that Angela lacked the capacity to make a reasonable decision to accept or refuse medication and (2) failed to provide Angela with all the statutorily-required written information about the proposed medications at issue, including the risks and benefits of each medication and alternatives to medication. Thus, the State admits that it failed to comply with some of the Code's mandatory prerequisites to the involuntary administration of psychotropic medication. Angela further maintains that the State's Attorney of LaSalle County violated section 3-101(a) of

the Code, which requires the State's Attorney to "ensure that petitions, reports and orders" filed under the Code are "properly prepared."

¶ 20    It is reasonably likely that the resolution of each of these issues of statutory compliance will affect future cases involving Angela, because she will likely again be subject to involuntary admission and medication and the court will likely again commit the same alleged errors. See *In re Val Q.*, 396 Ill. App. 3d 155, 161 (2009) (*overruled on other grounds by In re Rita P.*, 2014 IL 115798, ¶¶ 33–34); *In re Jonathan P.*, 399 Ill. App. 3d 396, 401 (2010). The errors committed in this case recur continually in mental health cases. See, *e.g.*, *In re Amanda H.*, 2017 IL App (3d) 150164, ¶¶ 42-46 (State failed to present a written predisposition report or testimony providing the information required to be included in such a report); *In re Lance H.*, 402 Ill. App. 3d 382, 387-88 (2010) (State failed to include the names and addresses of family or friends in its involuntary commitment petition, as required by the Code); *In re R.K.*, 338 Ill. App. 3d 514, 521-22 (2003) (State did not present any evidence that respondent lacked the capacity to make a reasoned decision about her treatment); *In re Richard C.*, 329 Ill. App. 3d 1090, 1094-95 (2011) (respondent was provided no written information about the risks and benefits of the medications at issue or any alternatives to medication). Accordingly, the "capable of repetition" exception applies here.

¶ 21    The State and the dissent correctly note that fact-specific issues presented in a given case are not subject to the "capable of repetition" exception because such issues are unlikely to recur in future cases and the resolution of such issues will not impact future cases. *Alfred H.H.*, 233 Ill. 2d at 359-61. Contrary to the State's and the dissent's assertion, however, the instant appeal does not merely involve fact-specific issues. Rather, it involves the State's complete failure to observe several mandatory procedural and substantive requirements of the Code, the trial court's

entry of involuntary commitment and medication orders despite those statutory violations, and Angela's counsel's ineffectiveness for failing to object to the State's errors and omissions. Our appellate court has recognized that the "capable of repetition" exception applies under these circumstances. See, *e.g.*, *Val Q.*, 396 Ill. App. 3d 155 (applying the "capable of repetition" exception where respondent contended that the trial court erred by delegating to physicians its duty of assessing the risks of the treatment and it was reasonably likely that the resolution of that issue "would affect future cases involving respondent, because respondent will likely again be subject to involuntary treatment and the court will likely again commit the same alleged error"); *Tara S.*, 2017 IL App (3d) 160357, ¶ 17 (applying the "capable of repetition" exception to claim of ineffective assistance of counsel in proceedings under the Code).

¶ 22    Because we hold that the capable of repetition exception applies, we do not need to address Angela's arguments that the "public interest" and "collateral consequences" exceptions also apply. We now turn to the merits of this appeal.

¶ 23                    2. Angela's Involuntary Commitment and treatment

¶ 24    As the State concedes, the State's petition for involuntary commitment in this case was fatally deficient. The petition did not include the names of any of Angela's relatives or information as to why they could not be contacted, as required by section 3-601(b)(2) of the Code (405 ILCS 5/3-601(b)(2) (West 2016)). That is reversible error. *In re Lance H.*, 402 Ill. App. 3d 382, 387-89 (2010). In addition, although the court ordered the State to file a complete predisposition report as required by section 3-810 of the Code (405 ILCS 5/3-810 (West 2016)), the State merely filed a one-page, form preliminary treatment report that did not meet the requirements of section 3-810. The state also failed to present oral testimony containing the information required to be in the predisposition report pursuant to section 3-810. These failures

by the State also require reversal of the trial court's commitment order. *In re Alaka W.*, 379 Ill. App. 3d 251, 271 (2008); *Daryll C.*, 401 Ill. App. 3d at 756; *In re Daniel M.*, 387 Ill. App. 3d 418, 422 (2008).

¶ 25 As the State further acknowledges, its petition for involuntary medication was also insufficient as a matter of law. The State presented no evidence suggesting that Angela had received written notice of the side effects, risks and benefits of, and alternatives to, each of the proposed medications, as required by section 2-102(a-5) of the Code (405 ILCS 5/2-102(a-5) (West 2016). Accordingly, the State failed to demonstrate by clear and convincing evidence that the respondent lacked the capacity to make a reasoned decision about her medical treatment, as required by section 2-107.1(a-5)(4)(E) of the Code (405 ILCS 5/2–107.1(a–5)(4)(E) (West 2016)). *In re Wilma T.*, 2018 IL App (3d) 170155, ¶ 23; *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 22. This failure requires reversal of the trial court's involuntary medication order. *Wilma T.*, 2018 IL App (3d) 170155, ¶ 23; *Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 22.

¶ 26 It was the State's Attorney's duty to ensure that the petitions for involuntary commitment and medication were properly prepared. 405 ILCS 5/3-101(a) (West 2016). His failure to correct the fatal inadequacies in the petitions rendered each petition invalid.

¶ 27 3. Ineffective assistance of counsel

¶ 28 As the State concedes, Angela received ineffective assistance of counsel because her attorney failed to object to the fatal deficiencies in the State's petitions or move to dismiss the petitions for failure to state a claim. Angela's counsel also failed to hold the State to the Code's substantive requirements by neglecting to object to the State's failure of proof as to certain required elements of its case under the Code, such as the written notice requirement and the required showing that the respondent lacks the capacity to make a reasoned decision about her

- 10 -

treatment. That rendered Angela's counsel's performance deficient and prejudicial, and therefore ineffective. *In re Jessica H.*, 2014 IL App (4th) 130399, ¶¶ 26, 35 (counsel's failure to notify the trial court that the State's commitment petition was untimely or to move to dismiss the petition constituted ineffective assistance); *Daryll C.*, 401 Ill. App. 3d at 756–57 (counsel's failure to object to State's failure to file predisposition report constituted ineffective assistance); see also *Alaka W.*, 379 Ill. App. 3d at 271; *Daniel M.*, 387 Ill. App. 3d at 422.

¶ 29 Angela's counsel was also ineffective for failing to object to: (1) the trial court's order of Zyprexa and a CAT scan, neither of which were included in the State's involuntary treatment petition and (2) the trial court's failure to notify Angela of her right to appeal the involuntary commitment and medication orders in violation of section 3-816(b) of the Code, which requires the court to provide such notice both orally and in writing. 405 ILCS 5/3-816(b) (West 2016).

¶ 30                                    CONCLUSION

¶ 31 For the foregoing reasons, we reverse the judgment of the circuit court of LaSalle County.

¶ 32 Reversed.

¶ 33 JUSTICE SCHMIDT, dissenting:

¶ 34 While the majority's concerns are well founded, we are bound by our supreme court's admonishment not to decide moot questions. *Alfred H.H.*, 233 Ill. 2d at 351. The majority finds that this case falls within the "capable of repetition, yet evading review" exception to the mootness doctrine. *Supra* ¶ 20. This exception has two elements: (1) the challenged action is in its duration too short to be fully litigated prior to its cessation and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again. *In re A Minor*, 127 Ill. 2d 247, 258 (1989).

- 11 -

¶ 35    The first element is satisfied. However, the second element is not. The fact that respondent may face involuntary admission and involuntary medication in the future is not a sufficient basis to satisfy the second element of this exception to the mootness doctrine. *Alfred H.H.*, 233 Ill. 2d at 358-61. Respondent is not arguing that any statute is unconstitutional, and she may be subjected to the same unconstitutional statute in the future. Nor does she challenge the trial court's interpretation of a statute. She argues only that the trial court and the State failed to follow certain statutory procedures, and her counsel was ineffective for failing to object to the failure to follow the procedures. Her argument is fact-specific. There is no clear indication of how a resolution of the issues raised in this case could be of use to respondent in a future litigation as any future litigation would be based upon new petitions, new hearings, new evidence, and an assessment of whether the State met its burden of proof in those cases. See *id.* at 360 (making a similar statement about the argument raised in that case). Nothing in the majority's decision constitutes anything other than a recitation of existing case law. In other words, the majority decision does not offer any new guidance to be used in the future by litigants. While it is troubling that the court and parties below appear to repeatedly disregard procedural requirements in involuntary commitment proceedings, there is no justification for issuing this order, which applies already existing law to the facts of this case and has no precedential value.

¶ 36    The majority finds the above exception to the mootness doctrine is satisfied and does not address the alternative mootness exceptions raised by respondent on appeal. First, respondent argues that the public interest exception to the mootness doctrine is also satisfied. This argument should be rejected as well.

¶ 37　　　　The public interest exception is applicable only if there is a clear showing that: (1) the question is of a substantial public nature; (2) an authoritative determination is needed for future guidance; and (3) the circumstances are likely to recur. *In re J.B.,* 204 Ill. 2d 382, 387 (2003). The exception is narrowly construed and requires a clear showing of each criterion. *In re India B.*, 202 Ill. 2d 522, 543 (2002). The second element is not satisfied in this case. This exception does not apply when there are no conflicting precedents requiring an authoritative resolution. The majority does not resolve any conflicting issues in the law. Rather, it applies existing case law to the specific facts of this case. Therefore, an authoritative determination is not necessary as required by this exception.

¶ 38　　　　Second, respondent raised the collateral consequences exception to the mootness doctrine. The collateral consequences exception applies where a respondent has suffered or is threatened with an actual injury traceable to the involuntary commitment order and likely to be redressed by a favorable judicial decision. *Alfred H.H.*, 233 Ill. 2d at 361. Here, respondent does not have an actual traceable injury. This is at least respondent's second involuntary commitment. There are no collateral consequences when a respondent has had an involuntary commitment prior to the instant case. *Id.* at 362-63. Any collateral consequence that could be identified already existed as a result of respondent's prior involuntary commitment. *Id.*

¶ 39　　　　This appeal should be dismissed as moot.